IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**WESTERN HERITAGE BANK f/k/a
MESILLA VALLEY BANK, JERRY W.
BELL, III, and LUCINDA LOVELESS,**

      **Plaintiffs,**

**vs.**                     **Case No. 2:11-CV-00630 MV/WPL**

**FEDERAL INSURANCE COMPANY,**

      **Defendant.**

## DEFENDANT FEDERAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant and Cross-Claimant Federal Insurance Company ("Federal") moves this Court for summary judgment on all claims. Federal hereby certifies under Local Rule 7.1(a) that it has made inquiry of Plaintiffs' counsel, and that Plaintiffs oppose and do not concur in this motion. Federal's motion for summary judgment is based on the grounds set forth in the below Memorandum Brief.

### I.     OVERVIEW AND SUMMARY OF ARGUMENT

This civil action - - brought against Federal by Western Heritage Bank f/k/a Mesilla Valley Bank ("the Bank") and two of its former officers, Lucinda Loveless and Jerry Bell - - involves an insurance coverage dispute under a "portfolio" or "package" policy ("the policy") Federal issued to the Bank. Federal is entitled to summary judgment based on each of these two independent grounds:

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

**A.**   **First Ground For Summary Judgment:  Federal's Coverage Analysis And Denial Of Coverage Are Legally Correct**

Plaintiffs repeatedly have tendered a third-party insurance claim to Federal.  Federal diligently responded to each tender of the claim and has consistently denied coverage under the policy for the claim.  The claim arose out of a civil lawsuit by a third-party (Hawkins) which had leased commercial premises for use as a fast food restaurant.  Lujo (the tenant) was a customer of the Bank, and Hawkins (the landlord and property owner) was not.  Hawkins in its Texas state court lawsuit claimed the Bank and related defendants:  (1) improperly placed deeds of trust and other liens on the leasehold property to secure the Bank's loans to Lujo; (2) thereafter wrongfully refused to release the liens as demanded by Hawkins, even after Lujo had left the premises following default and foreclosure; and (3) thereby caused Hawkins to sustain substantial damages and impaired its efforts to re-lease the premises on a timely and market-competitive basis.

Federal properly denied coverage for the Hawkins claim under the terms of the policy.  The interpretation of an insurance contract is a matter of law for the Court to decide, and it is the insured's burden to show coverage under the policy.  Battishill v. Farmers Alliance Ins., Co., 2006-NMSC-004, ¶6, 139 N.M. 24, 26.  Analysis of the pertinent policy terms is clear and straightforward in this case.

Federal acknowledged the Bankers Professional Liability ("BPL") Section of the policy does provide coverage for lending-related activities of the Bank, such as the taking of security interests as alleged by Hawkins.  But BPL coverage expressly is limited to claims brought by customers of the Bank (and it is undisputed that Hawkins never was a Bank customer).  The only

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

other potentially responsive Section of the policy, the Directors and Officers Liability ("D&O")

Section, provides no coverage for the Hawkins suit because the D&O Section (unlike the BPL

Section) expressly <u>excludes</u> coverage for any claim "based upon, arising from, or in consequence

of the performing or failure to perform **Professional Services** or **Lending Services**."  This broad

exclusion clearly applies to the Hawkins matter, since the liens placed by the Bank on the leased

property plainly "arise out of" and/or "are in consequence of" **Lending Services** provided by the

Bank to Lujo.  But for this pre-existing lending relationship, which gave rise to the liens,

Hawkins would have no claim for wrongful conduct against the Bank.[1]

**B.**     **Second Ground For Summary Judgment:  The Bank Settled (And Stipulated To Judgment In) The Underlying Hawkins Litigation In A Collusive Manner That Violates Public Policy And Bars Receipt Of Insurance Benefits From Federal**

The record is clear that the Bank settled the Hawkins litigation on these pre-arranged,

negotiated terms:  (1) the Bank stipulated it was liable to Hawkins and agreed that Hawkins

could conduct a summary bench trial to prove up its reasonable claimed damages against the

Bank; (2) the Bank agreed to pay Hawkins $200,000 in return for a written covenant by Hawkins

not to execute against the Bank for any greater amount; (3) the Bank at the damages trial did not

object to or oppose entry of judgment in favor of Hawkins in the requested amount of

approximately $1.3 million; and (4) the Bank, as part of the pre-arranged settlement deal,

---

[1]  The **Lending Services** exclusion bars D&O Section coverage for the claims tendered <u>both</u> by the Bank <u>and</u> its former officers.  A second relevant policy exclusion pertains to the Bank as the "insured organization" under the D&O Section.  In particular, the D&O Section excludes any claim against the Bank "based upon, arising from, or in consequence of any actual or alleged breach of a written or oral contract or agreement where such **Organization Claim** is brought by or on behalf of a party to such contract or agreement."  This additional exclusion is triggered because Hawkins' claim against the Bank, as Hawkins itself pleaded, is based upon breach of its written lease agreement with Lujo, which allegedly prohibited the liens.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

accepted assignment of a 40% stake in recovery of the judgment obtained by Hawkins, and

agreed to pursue collection of that judgment against Federal, for the benefit of both itself and

Hawkins, in the present action before this Court.

Through this stratagem, the Bank - - after limiting its own exposure to $200,000   - - no

longer opposed Hawkins' damages claims but instead assumed a direct interest in maximizing

the amount of the judgment.  As the attorney for the Bank candidly admitted in deposition:

> Q. Yet when you were planning to do your jury trial, you would have
>    argued strenuously against such a high damage award; isn't that true?
> A. That's correct.
> Q. You didn't do that here?
> A. I did not.
> Q. Because the atmosphere was different?
> A. Correct.  I mean it wasn't a trial on damages, so to speak.
> Q. But the court entered judgment after this proceeding just as she would after a
>    trial, didn't she?
> A. Yes.
> Q. And the judgment apparently is just like a judgment entered after any ordinary
>    trial, right?
> A. It's a final judgment of record, yes.…
> Q. But you also knew that if Hawkins succeeded in getting a huge damage
>    number put on the board - - put on the judgment by the judge, that the Bank - -
>    if the Bank's team was successful against my client, Federal Insurance
>    Company, the Bank, itself, would realize a further recovery, right?
> A. It's possible, yes.
> Q. So the higher the number the judge put on the judgment, the higher potential
>    upset [sic for "upside"] for your client; fair to say?
> A. As a logical proposition, that's logical, yes.[2]

This non-adversary trial and collusive damages judgment - - which Plaintiffs now ask this

Court to enforce - - violate public policy and New Mexico law.  As a result of its inequitable

---

[2]  Deposition of David Lutz, Esq. at p. 172, ll. 3-18 and p. 115, ll. 11-23, reproduced in the
accompanying Appendix of Exhibits at 252, 238.  See n.3 infra.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

conduct and unclean hands, the Bank may not recover against the insurer or under the insurance

policy.  The Tenth Circuit Court of Appeals affirmed (former) Chief U.S. District Judge

Conway's decision granting summary judgment and denying insurance coverage in a strikingly

similar New Mexico case, <u>Continental Cas. Co. v. Westerfield</u>, 961 F. Supp. 1502 (D. N.M.

1997), aff'd sub nom. <u>Continental Cas. Co. v. Hensel</u>, 4 Fed. Appx. 703 (10th Cir. 2001).  The

Tenth Circuit panel there ruled in pertinent part as follows:

> […] We conclude that the district court properly determined that the … settlement
> and resulting state court judgment were unenforceable against the
> nonparticipating insurers.  Most directly, the record establishes that the amount of
> the judgment … is unreasonable.  Additionally, the procedure through which the
> judgment was entered - - an uncontested trial in which plausible defenses were
> not advanced and in which plaintiff and defendant had a joint interest in
> maximizing the amount recovered - - evinces collusion between the parties….
> For the reasons set forth above, we conclude that, in its rulings on "collusion" and
> "no risk," the district court properly held that [the insurers] are not obligated to
> indemnify [the insureds] .…

4 Fed. Appx. 703 (Westlaw) at 16, 18.  The present case is governed by these same legal and

equitable principles.

For either or both of these two independent grounds, Federal Insurance Company

respectfully submits that it is entitled to summary judgment as to all claims asserted against it by

Plaintiffs in this case.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS AND REFERENCES TO SUPPORTING EVIDENCE[3]

### A.   The Insurance Policy

1.  Federal issued ForeFront Portfolio for Community Banks, Policy No. 6801-4792, to Mesilla

---

[3] Federal has included the documents, deposition testimony and other evidence pertinent to this Motion in the Appendix of Exhibits ("App.").  The materials contained in the Appendix of Exhibits have been numbered consecutively and are cited herein by those page references in this format:  [App. __].

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

Valley Bank, the Bank's predecessor in interest; the policy combined several forms of insurance, including a BPL Section and D&O Section.  [App. 001]

2.  The policy was effective from September 22, 2005 through June 8, 2008, with an extended D&O reporting period through June 30, 2011.  [App. 084, 087]

3.  Under the BPL Section of the policy, the Bank purchased a Lender's Liability  Coverage Endorsement, which subject to its terms expanded the BPL coverage (for **Professional Services** rendered by the Bank) to include **Lending Services**.  [App. 062]  **Lending Services** therein are defined as:

> any act performed by an **Insured** for a **Lending Customer** of the **Organization** in the course of extending or refusing to extend credit or granting or refusing to grant a loan or any transaction in the nature of a loan, including any act of restructure, termination, transfer, repossession or foreclosure."  [App. 050]

4.  For purposes of the BPL Section, "**Claim**" is defined, in relevant part, as:

> …a civil proceeding commenced by the service of a complaint or similar pleading…by or on behalf of a **Customer** against an **Insured** for a **Wrongful Act**…"  A "**Customer**" includes "any person or entity that…has or had a written agreement with the **Organization**; or…submitted a written application to the **Organization**…to receive **Professional Services**." [App. 049]

5.  Whereas the BPL Section of the policy, through the Lender's Liability Coverage Endorsement, expressly <u>includes</u> coverage for **Lending Services** as well as other covered **Professional Services** rendered by the Bank, the D&O Section expressly <u>excludes</u> all such coverage.  D&O Section Exclusion 4.j. states:

> The Company shall not be liable for **Loss** on any account of any **Claim:**…based upon, arising from, or in consequence of the performing or failure to perform **Professional Services** or **Lending Services.**
> [App. 022, 024]

6. D&O Section Exclusion 7.b. for Breach of Contract Liability states:

> The Company shall not be liable, under Insuring Clause 3, for **Loss** on account of any **Organization Claim:** …b. based upon, arising from, or in consequence of any actual or alleged breach of a written or oral contract or agreement where such **Organization Claim** is brought by or on behalf of a party to such contract or agreement.
> [App. 040]

**B.**     <u>The Underlying Hawkins Litigation</u>

7. On January 24, 2008, Hawkins sued the Bank in the District Court of El Paso County, Texas for: (a) wrongfully recording liens to secure loans it made to Hawkins' commercial tenant, Lujo Corporation ("Lujo"); and (b) refusing to remove such liens upon demand. [App. 088]

8. Hawkins claimed that Lujo's lease prohibited such liens on the leased premises. [App. 091]

9. After filing its Original Petition against the Bank, Hawkins several times amended its pleading. Whereas the pleading amendments at times added new parties, allegations or causes of action, the gravamen of the case remained that the Bank wrongfully had encumbered the leasehold and wrongfully refused to release the liens upon demand. [App. 097, 121, 145]

**C.**     <u>The Initial Claim Made By The Bank Under The Policy In 2008, And Federal's Coverage Position</u>

10. A copy of Hawkins' Original Petition was tendered by the Bank's insurance agent, Patty Wood ("Ms. Wood") to Federal on February 12, 2008. [App. 172]

11. On March 3, 2008, Federal examiner Dana Roosa ("Ms. Roosa") issued a coverage denial letter. [App. 175] Federal denied coverage under the BPL Section because the claim was brought by Hawkins, which was not a customer of the Bank, and therefore did not fall within the scope of the BPL Section. Coverage also was denied under the D&O Section based on

7

Exclusion 4.j., which excludes coverage for claims arising from Lending Services; and Exclusion 7.b., which excludes coverage for Loss based on a breach of contract when the claim is brought by a party to the contract.

**D.    Further Submissions Of The Claim Made By The Bank And Individual Plaintiffs In 2009, And Federal's Coverage Position**

12. One year later, on March 26, 2009, Ms. Wood submitted Hawkins' Second Amended Original Petition to Federal.  This amended pleading had added Plaintiffs Loveless and Bell as individual defendants.  [App. 097]  Ms. Roosa on May 13, 2009 sent Ms. Loveless and the Bank's counsel a second coverage analysis letter: (1) reaffirming that no coverage existed under the BPL Section because Hawkins was not a customer of the Bank; (2) denying coverage again under the D&O Section based on Exclusions 4.j., and 7.b.; and (3) further noting that the D&O Section would not cover Mr. Bell because he was not alleged to be acting in a managerial capacity for the transaction alleged.  [App. 181]

13. On June 29, 2009, Mr. Bell requested reconsideration of his claim for D&O coverage by another examiner.  [App. 187]  In response, examiner Allison Stal ("Ms. Stal") issued a third coverage analysis letter. [App. 188]  Ms. Stal concluded that D&O Section Exclusions 4.j. and 7.b. precluded coverage, assuming that Mr. Bell met the threshold issue of qualifying as an individual **Insured** under the policy.

**E.    The Re-Tender Of The Claim Made In 2011, And Federal's Coverage Position**

14. Almost two years later, in a letter dated June 3, 2011, the Bank's current counsel submitted a "respon[se] to [Federal's] denial of coverage letter of March 3, 2008," and enclosed Hawkins' Third Amended Original Petition for consideration by Federal.  [App. 192]  This

June 3, 2011 letter focused on Federal's denial of coverage under the D&O Section of the policy.

15. On June 16, 2011, Federal examiner Michele Underwood ("Ms. Underwood") issued a letter responding to the June 3, 2011 resubmission.  [App. 201]  Ms. Underwood's letter reaffirmed Federal's coverage position based on D&O Section Exclusions 4.j. and 7.b. and the prior coverage-related correspondence.

**F.**       **Settlement, Trial And Judgment In The Underlying Hawkins Case**

16. On July 12, 2011, the Bank's counsel sent Federal's counsel a letter advising that the Bank had offered to settle the Hawkins litigation for $200,000 plus "a partial assignment of the Bank's cause of action for bad faith insurance practices."  The letter also advised that a hearing would be held on July 15, 2011 in District Court in El Paso, Texas "to determine the reasonableness of the amount of damages being claimed by Hawkins."  [App. 210]

17. Counsel for Federal previously had advised that Federal was standing on its coverage denial and that the Bank should feel free to settle the case on reasonable terms.  [App. 208]

18. The Bank entered into a written settlement agreement with Hawkins (dated July 15, 2011), whereby the Bank:  (a) agreed to pay $200,000 to Hawkins; (b) received a covenant by Hawkins not to execute against the Bank for any greater amount; and (c) agreed to permit Hawkins to present proof of its damages claims in a bench trial and to have the Court enter judgment on such claims.  Additionally, as part of the settlement made by the Bank with Hawkins, the Bank accepted assignment of a 40% stake in recovery of the judgment obtained by Hawkins, and agreed to pursue collection of that judgment against Federal, for the benefit of both itself and Hawkins, in the present action before this Court.  The written settlement

9

documentation is included in the Appendix of Exhibits.  [App. 254]

19. Consistent with the terms of this pre-arranged and negotiated settlement, counsel on July 15, 2011 appeared before the state District Court in El Paso County, Texas for a bench trial of Hawkins' damages claims against the Bank.  The transcript is included in the Appendix of Exhibits.  [App. 282]  The Bank did not call its own damages expert to counter telephonic testimony provided to the Court by Hawkins' damages expert, and did not argue for or propose any damages amount other than the approximate $1.3 million amount proffered by Hawkins through its witnesses and presentation to the Court.  [App. 371]

20. At the conclusion of trial, the Texas Court "found the actual damages presented, the attorneys' fees presented, and the litigation expenses presented, to be fair and reasonable in this matter," and entered judgment for Hawkins in the total amount of $1,234,245.00 (after allowing offsets for amounts previously paid to Hawkins under settlements reached with defendants other than the Bank) plus pre- and post-judgment interest as allowed by law. [App. 280]  The Texas Court's judgment recites that at the outset of trial, "the parties announced settlement wherein the Defendants stipulated as to liability and that settlement is subject to the Court's determination of the reasonableness of the damages."  [App. 279]

## G.   The Current Litigation Against Federal

21. On June 9, 2011, one week after the June 3, 2011 resubmission of the claim, the Bank filed the present action against Federal.

22. The operative Second Amended Complaint (filed November 23, 2011) includes Ms. Loveless and Mr. Bell (who each accepted assignment of a contingent stake in any recovery against Federal [App. 216, 213]) as additional Plaintiffs.  This current pleading contends that Federal

10

breached its obligations under the insurance contract and contains these causes of action:  (1) Request for Declaratory Relief; (2) Intentional and Bad Faith Breach of Insurance Contract; (3) Bad Faith Failure to Investigate or Defend; (4) Breach of Duty to Indemnify; (5) Breach of Duty to Settle Within Policy Limits; (6) Violation of the New Mexico Unfair Insurance Practices Act; and (7) Violation of New Mexico Unfair Trade Practices Act.

23. Federal filed an Answer denying that its claims handling and coverage analysis were in any way unreasonable or deficient, and also filed a Cross-Complaint for Declaratory Relief, seeking declarations that the Bank failed to establish a covered claim and that Federal had no duty to defend or indemnify the Bank in the Hawkins litigation.  Federal filed a First Amended Cross-Complaint for Declaratory Relief on December 2, 2012, to add the additional Plaintiffs, Ms. Loveless and Mr. Bell, as Cross-Defendants.

### III.   LEGAL STANDARDS APPLICABLE TO THIS MOTION FOR SUMMARY JUDGMENT

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action." Zaintz v. City of Albuquerque, 739 F. Supp. 1462, 1467 (D.N.M. 1990). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  "Where the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.   LEGAL ARGUMENT

**A.**   **Federal Is Entitled To Summary Judgment As A Matter Of Law Because Its Coverage Position Is Correct And Constitutes The Only Reasonable Interpretation Of The Policy**

**1.**   **Plaintiffs Do Not Contest Federal's Declination of Coverage under the Bankers Professional Liability Section of the Policy.**

Plaintiffs concede that Federal properly denied coverage for the Hawkins litigation under the BPL Section of the policy, on the ground that Hawkins was not a "customer" of the Bank. Not only do Plaintiffs' counsel's June 3, 2001 claim resubmission and the Second Amended Complaint abandon any argument for BPL coverage, but Plaintiffs' claims handling expert has conceded that Federal's declination of coverage under the BPL Section is correct.  [App. 219]

Plaintiffs' concession that the BPL Section provides no coverage for the Hawkins matter is highly significant.  Plainly, the liens which the Bank placed on the Hawkins leasehold (to secure the Bank's loans to Lujo) constitute actions by the Bank in furtherance of its core professional activity of lending money to customers.  Coverage for a claim based on such professional activity by the Bank most logically would be located, if available, in the BPL Section of the policy, rather than other sections, i.e., Employment Practices Liability, Fiduciary Liability, Directors and Officers Liability, or Outside Directorship Liability.[4]  Moreover, the

---

[4]  Indeed, Plaintiffs' claims handling expert acknowledged as much in his deposition:

> Q. … You'll agree with me that generally speaking, the issues that arose in the
> Hawkins litigation are as a result of the Bank conducting its own professional
> activities as a Bank?
> A. Yes,
> Q. And isn't it true that a reasonable claims person getting  the claim notice in

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

record is clear that the Bank elected to purchase the optional Lender Liability Coverage

Endorsement [App. 062], which enhanced the scope of BPL coverage to specifically include

coverage for lending-related customer claims.[5]

      Because the Hawkins matter clearly falls outside the scope of BPL coverage under the

policy, Plaintiffs have attempted to make a case that potential coverage exists under the D&O

Section - - notwithstanding the D&O Section's express exclusion of coverage for any claim

"based upon, arising from or in consequence of the performing or failure to perform … **Lending**

**Services"** by the Bank.  As set forth below, Plaintiffs' efforts to locate potential coverage in the

D&O Section are unavailing and based on unreasonable, even tortured, attempts to read certain

words and phrases in the D&O Section in a manner that is both linguistically strained and at odds

with any reasonable interpretation of the policy read in context and as a whole.[6]

### 2.    The Director and Officer Liability Section of the Policy Does Not Provide Coverage for the Claims Tendered by the Bank and the Individual Plaintiffs.

    a)    The Lending Services exclusion bars coverage for the Hawkins matter as to all Plaintiffs.

Since the Bank first tendered the Hawkins claim in March 2008, Federal consistently has

---

looking at the Hawkins litigation looking at this package policy the first place a
person would reasonably look for coverage would be under the bankers
professional liability section of the policy?
A. I think I'd agree with that.  You know, the only concern I would have with that
is that you wouldn't want to stop there…. [App. 221]

[5]  Not part of the Bank's policy, however, was an additional endorsement expanding the scope of
BPL coverage to include claims asserted by third parties as well as customers.   See App. 421.

[6]  In construing an insurance contract, a court must consider "the plain language of the relevant
provisions, giving meaning and significance to each word or phrase within the context of the
entire contract, as objective evidence of the parties' mutual expression of assent."  United
Nuclear Corp. v. Allstate Ins. Co., 2011-NMCA-039, ¶ 11, 149 N.M. 574, 577 (emphasis added).

expressed the position that Exclusion 4.j. bars coverage for the claim under the D&O Section of

the policy.  Exclusion 4.j. of the D&O Section reads as follows:

> The Company shall not be liable for **Loss** on account of any **Claim**: based upon,
> arising from, or in consequence of the performing or failure to perform
> **Professional Services** or **Lending Services**.  [App. 022, 024]

Lending Services is defined (under both the D&O Section and the BPL Section) as follows:

> **Lending Services** means any act performed by an **Insured** for a **Lending
> Customer** of the **Organization** in the course of extending or refusal to extend
> credit or granting or refusal to grant a loan or any transaction in the nature of the
> loan, including any act of restructure, termination, transfer, repossession or
> foreclosure.  [App. 050]

The Bank's actions in placing liens on the Hawkins leasehold plainly arose in the course of

extending credit to Lujo and/or restructuring such credit.  Thus, under the plain meaning of the

term **Lending Services** as defined in the policy, Exclusion 4.j. applies to the situation alleged in

the Hawkins litigation.  Moreover, the terms of the 4.j. Exclusion for **Lending Services** are

broadly worded to include any **Claim** "based upon, arising from, or in consequence of" any

performance of **Lending Services** by Bank.  The Bank placed liens on the Hawkins leasehold to

secure Lujo's credit, and it therefore is incontrovertible that the liens about which Hawkins

complained, and demanded release, "arose from" and were "in consequence of" **Lending

Services** provided by the Bank.

Federal's denial of D&O coverage based on the **Lending Services** Exclusion thus is

objectively reasonable and based on a straightforward and logical reading of the policy

language.[7]  Plaintiffs strive mightily to rebut or overcome Federal's cogent and well-reasoned

---

[7] See generally the analysis provided by Morris J. Chavez,  Federal's claims handling expert.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

position, but their assertions in this regard must be rejected as implausible and unavailing.

        b)    <u>Plaintiffs' attempts to "get around" the Lending Services Exclusion are contorted and unreasonable.</u>

In the course of this case, Plaintiffs have offered up two lines of challenge to Federal's reliance on Exclusion 4.j. of the D&O Section.  Plaintiffs' first assertion is that certain definitional language in the D&O Section is effective to negate the **Lending Services** Exclusion or otherwise provide coverage for the Hawkins claim.  Plaintiffs' second assertion is that subsequent events involving Hawkins, Lujo and the Bank should have caused Federal to reevaluate its coverage position and withdraw its reliance on the 4.j. Exclusion.  Neither the "carve-back" assertion nor the "subsequent events" assertion has any merit.  Plaintiffs have failed to locate any <u>genuine</u> ambiguity regarding coverage or adduce any reasonable interpretation of the policy that is contrary to Federal's coverage analysis.

<u>Plaintiffs "carve-back" assertion</u>.  This assertion is detailed in Plaintiffs' counsel's June 3, 2011 claim resubmission letter [App. 192], and summarized in the allegations in the Second Amended Complaint.  Plaintiffs' "carve-back" assertion is based on the definitional language of **Professional Services** in the D&O Section of the policy [App. 021]:

> **Professional Services** means **Loan Servicing** and only those services performed or required to be performed by an **Insured** for or on behalf of a **Customer** of an **Insured**:
>     (a) for a fee, commission or other monetary consideration;
>     (b) where a fee, commission or other monetary consideration would usually be received by the **Insured** but for business or other reasons is waived by the **Insured**; or
>     (c) for other remuneration which inures to the benefit of such **Insured**.
> **Professional Services** shall not include:

---

[App. 381]

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

    1.      Medical or healthcare services, real estate appraisal  services, architectural or construction management services, the practice of law or the rendering of legal services;

    2.      Services performed by any entity which the insured shall have  acquired ownership or control as security for a loan, lease or other extension of credit; or

    3.      **Lending Services**.

Plaintiffs assert that the second part of this definitional language, which lists what things are "not" included within **Professional Services**, not merely narrows the definition of **Professional Services** but also affirmatively provides coverage under the D&O Section for the items listed. Thus, Plaintiffs contend that the "shall not include" language quoted above should be read as "an exclusion to an exclusion," which expressly grants D&O coverage for items (1) through (3). Based on this leap of logic, Plaintiffs argue that not only is **Lending Services** restored to coverage status under the D&O Section, but that the D&O Section also provides coverage for "the practice of law or the rendering of legal services" as well as "services performed by any entity which the **Insured** shall have acquired ownership or control as security for a loan, lease, or other extension of credit."

       Plaintiffs thus contrive to interpret definitional language in the policy - - which plainly details what **Professional Services** does <u>not</u> include - - as constituting an affirmative grant of coverage.  That is not a logical, rational or correct way to interpret such definitional language in the context of the policy as a whole.[8]  Federal plainly and clearly excluded **Lending Services**

---

[8] Significantly, the Lender Liability Coverage Endorsement (which Plaintiffs purchased as part of their BPL coverage) likewise contains an express definition of **Professional Services** that recites that items (1) and (2) quoted above are not included within the definition of **Professional Services**.  [App. 062]  The plain intent of the **Professional Services** definition "shall not include" language - - where it appears both in the BPL <u>and</u> D&O Sections - - is to remove rather than add the listed items from potential coverage anywhere in the policy.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

under the D&O Section at Exclusion 4.j., and there is nothing in the definitional language of **Professional Services** that states or fairly implies that Exclusion 4.j. is overruled or negated.[9]

<u>Plaintiffs' "subsequent events" assertion</u>.  Plaintiffs also attempt to evade application of the **Lending Services** Exclusion by asserting that the Exclusion no longer remained pertinent, after Lujo defaulted and vacated the premises.  Plaintiffs assert that once Lujo was "out of the picture," the Bank's refusal to release the liens constituted a **Wrongful Act** against Hawkins, which should trigger coverage under the D&O Section.  This theory is insufficient to overcome the objective (and broad) language of Exclusion 4.j., which bars D&O coverage for any claim "based upon, arising from, or in consequence of … the performing of **Lending Services**," which are defined to include "any act" "in the course of extending … credit" … "including any act of restructure, termination, transfer, repossession or foreclosure."  While it is true that the situation "on the ground" involving Lujo's tenancy evolved, the gravamen of Hawkins' allegations and claims always was that the Bank improperly placed liens on the leasehold, and then wrongfully refused to release them upon Hawkins' repeated demands.  Such was Hawkins' essential claim each time Hawkins amended its pleading and each time the Bank tendered the matter to Federal.

The fact that the Bank stubbornly may have refused to release the liens even after the departure of Lujo from the premises, does not all of a sudden create coverage under the policy

---

[9]  "General liability policies are modular in structure…. The modular parts include: … definitions … insuring clause, exclusions and endorsements."  Scott C. Turner, <u>Insurance Coverage of Construction Disputes</u> § 1:6 (2011).  Just as "an exclusion cannot create coverage if coverage did not exist in the first instance under the insuring agreement" a policy definition cannot be construed to grant coverage; policy definitions simply govern the meaning of terms. Lee R. Russ & Thomas F. Segall, <u>Couch on Insurance 3d</u> § 101:6 (2011).

where none existed before.  Because the liens placed upon the property "arose from" and/or were

"in consequence of" the Bank's lending activities, including restructure and foreclosure of its

loans, the objective and unambiguous terms of the **Lending Services** Exclusion remain pertinent

to the Hawkins claim at all times.  Hawkins' claim of continuing wrongful conduct by the Bank

in refusing to release the liens is based on conduct that indisputably "arose from" and was "in

consequence of" the Bank's **Lending Services**.

      c)    <u>Additionally, the "Contractual Liability" exclusion applies by its terms to the insurance claim tendered by the Bank</u>.

While the foregoing analysis provides a legally sufficient ground for Federal's denial of

Plaintiffs' tendered claims, Federal also properly relied on Exclusion 7.b., which is contained in

the Broad Form Entity Coverage Endorsement the Bank purchased under the D&O Section.

Exclusion 7.b., which pertains to any **Organization Claim** against the Bank itself, provides as

follows:

> The Company shall not be liable, under insuring clause number 3, for **Loss** on account of any **Organization Claim**: … based upon, arising from or in consequence of any actual or alleged breach of a written or oral contract or agreement where such **Organization Claim** is brought by or on behalf of a party to such contract or agreement.

Here, Hawkins' entire case against the Bank is premised on the theory that the Bank's liens

violated the terms of Hawkins' written lease agreement with Lujo.  Such allegations satisfy the

terms of the 7.b. Exclusion, as there is no requirement in the Exclusion that the Bank or an

individual **Insured** itself be a party to the contract or agreement at issue.  It is certainly rational

for an insurer to exclude D&O liability exposure not only for business contracts entered into by

its insureds, but also for unknown and unforeseeable contracts between third parties that, as in

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

the Hawkins case, could give rise to contingent liability claims against the Bank.

**B.      Because Federal's Coverage Position Is Legally Correct, Plaintiffs Have No Viable Cause Of Action Against Federal Under Any Of The Legal Theories Asserted In The Second Amended Complaint**

Plaintiffs in their Second Amended Complaint allege not only that Federal breached contractual duties to defend, indemnify and settle (Counts I, IV and V) but also that Federal acted in intentional bad faith breach of the insurance contract, (Count II), failed in bad faith to investigate and defend (Count III), violated the New Mexico Unfair Insurance Practices Act (Count VI) and violated the New Mexico Unfair Trade Practices Act (Count VII).  The foregoing analysis has demonstrated that Federal's coverage denial was well-founded and correct under the insurance contract, thus entitling Federal to summary Judgment as to Counts I, IV and V.  Under the undisputed material facts of this case, Federal also is entitled to summary judgment as to Plaintiffs' remaining claims of statutory violations and for common law insurance "bad faith."

Because Federal has shown that it had no duty to defend or indemnify Plaintiffs under the terms of the policy, Plaintiffs' statutory claims for unfair insurance practices or (more broadly) unfair trade practices necessarily fail as a matter of law.  See New Mem'l Assocs. v. Credit Gen. Ins. Corp., 973 F. Supp. 1027, 1031 (D.N.M. 1997) (dismissing statutory unfair insurance practices claims because there was no underlying breach of the insurance policy by the insurer).  Moreover, in both New Mem'l Assocs., supra. at 1031 and Dellaira v. Farmers Ins. Exchange, 2004-NMCA-132, ¶ 20, 136 N.M. 552, 558, it was held that an essential element of an insured's claim under the Unfair Practices Act is the existence of false or misleading statements by the insurer; here, Federal's coverage position was based not on false and misleading statements but on correct analysis of the policy terms.

19

While these considerations are sufficient to dispose of Plaintiffs' statutory claims against Federal, it bears emphasis that no showing can be made in this case that Federal was arbitrary, dilatory or non-responsive in its claims handling.[10]  The record is clear that Federal promptly responded in writing, and presented a reasonable explanation of its position, with respect to each tender or re-tender of the Hawkins claim by Plaintiffs.  Indeed, Plaintiffs' own claims handling expert candidly acknowledged that Federal "did a reasonably good job" in terms of the "timeliness and frequency of its claims communications" with Plaintiffs.  [App. 222]

Plaintiffs' claims of "bad faith" claims handling under New Mexico law can be sustained only if it can be shown both:  (1) that benefits due under the policy were improperly withheld; and (2) the reason for withholding benefits was frivolous or unfounded.  Because Federal correctly concluded that Plaintiffs did not suffer a loss or incur a claim covered by the policy, Federal's denial of coverage was justified, and there can be no finding of insurance "bad faith."  "[T]he concept of bad faith failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy."  Charter Servs, Inc. v. Principal Mut. Life Ins. Co., 117 N.M. 82, 88, 868 P. 2d 1307, 1313 (N.M. Ct. App. 1994).  [11]

Moreover, even in instances (unlike here) where there is a genuine dispute as to whether or not the policy provides coverage for a claim, there can be no finding of bad faith by the

---

[10]  See generally the cogent analysis contained in the report of Federal's claims handling expert, former New Mexico Insurance Superintendent, Morris J. Chavez.  [App. 389-391]

[11]  See also Riordan v. Lawyers Title Ins. Corp., 393 F. Supp. 2d 1100, 1105-06 (D. N.M. 2005), citing Umukoglu v. Provident Life & Act. Ins. Co., 131 F. Supp. 2d 1215, 1226, (D. N.M. 2001) (summary judgment as to all claims asserted by insured appropriate when insurer has a reasonable basis for its decision to deny insurance benefits).

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

insurer absent what the New Mexico Supreme Court has described as a "frivolous or unfounded refusal" to pay or provide policy benefits.  See Jackson Nat'l Life Ins. Co. v. Receconi, 113 N.M. 403, 419, 827 P. 2d 118, 134 (1992).  Federal's claims handling and coverage analysis in this case were reasonable in all respects and do not constitute conduct which fairly can be characterized as unfounded, baseless or frivolous.  As the Tenth Circuit Court of Appeals stated in Sloan v. State Farm Mur. Auto. Ins. Co., 360 F. 3d 1220, 1233 (10th Cir. 2004), citing Jackson Nat'l Life Ins. Co., supra:

> "Unfounded" in this context does not mean "erroneous" or "incorrect"; it means essentially the same thing as "reckless disregard," in which the insurer utterly fail[s] to exercise care for the interest of the insured in denying or delaying payment on an insurance policy.  [Citation omitted]  It means an utter or total lack of foundation for an assertion of non-liability – an arbitrary or baseless refusal to pay lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim.

Given Federal's showing that its claims handling and coverage analysis were reasonable and well-supported by the terms of the policy, no liability for "bad faith" conduct can be found as a matter of law.

**C.**      **Under The Circumstances Of This Case, Federal Also Is Entitled To Summary Judgment Denying All Plaintiffs' Claims Because The Trial And Resulting Judgment In The Underlying Hawkins Litigation - - Which Plaintiffs Are Asking This Court To Approve And Enforce - - Are Collusive And Against Public Policy**

Plaintiffs' Second Amended Complaint in this case expressly requests judgment declaring that "Federal is obligated to pay any Judgment entered against the Bank in the underlying [Hawkins] litigation, or pay any reasonable settlement entered into, including pre- and post-judgment interest on any Judgment and attorneys fees incurred by the Bank in the underlying litigation."  The material facts with respect to settlement, trial and judgment in the

21

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

underlying Hawkins litigation are set forth at Section II, F., above.  The collusive manner in which the Hawkins litigation was resolved provides Federal a second, independent ground for summary judgment in the present case.

> **1.** **The "Trial" with Respect to Hawkins' Damages Claim in the Underlying Litigation Was Not a _Bona Fide_ Adversary Proceeding, as the Bank under the Terms of the Underlying Settlement Stands to Benefit from - - and Share in - - the Damages Judgment Obtained by Hawkins**

The Bank crossed the line into unlawful conduct not by settling the Hawkins litigation, agreeing to a covenant not to execute, or even in assigning Hawkins an interest in recovery against Federal in the present case.  Each of these terms of settlement would be legally permissible standing alone.  The Bank crossed the line, however, when it:  (1) agreed to acquire a 40% recovery stake in any judgment Hawkins should obtain against the Bank itself; and (2) participated in a non-adversary trial of Hawkins' claimed damages with such a judgment-sharing agreement in place.  Such an arrangement subverts the integrity and fairness of the civil justice system, and produces a fabricated judgment that benefits both parties in the underlying litigation, while causing severe prejudice to the Bank's insurer.

Former Chief Judge Conway confronted a similar situation in Continental Cas. Co. v. Westerfield, 961 F. Supp. 1502 (D. N.M. 1997).  In that case, which involved claims of malpractice and fraud, certain insurance carriers of the defendant declined coverage under the terms of their policies.  The parties to the case entered into a settlement agreement absolving and releasing the defendant from personal liability but stipulating that the plaintiff would acquire a 90% interest in any recovery made in separate insurance bad faith litigation against the defendant's non-participating insurers.  Thereafter, the settling parties conducted a trial

22

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

proceeding solely on damages.    The result of the damages trial - - which was for all practical

purposes uncontested - - was a judgment of approximately $29.46 million.  When proceedings

were commenced to enforce the judgment against the non-participating insurers, the insurers

presented a motion to Judge Conway for summary judgment, contending that the underlying

damages trial and judgment were collusive and contrary to public policy.

Considering this record of events and proceedings - - which appears to be on all fours

with the record of events and proceedings in the present case - - Judge Conway granted the

insurers' motion for summary judgment, and did so in strong and unequivocal language:

> … [T]he settlement agreement and resulting proceeding were not only devoid of
> competing interest; the agreement permitting [defendant] Westerfield to retain a
> 10% interest in any judgment against the insurers created an **actual identity** of
> interest with [plaintiff] Hempel.  In essence, the larger the judgment entered by
> Judge Ashby, the more Westerfield stood to recover under his settlement
> agreement with Hempel.  Both stood only to gain by any effort by Hempel to
> maximize the judgment … It is difficult to conceive of a less adversarial
> agreement.  Certainly this settlement could not serve as the predicate for a trial
> in which the court could be assured of the "honest and actual antagonistic
> assertion of rights to be adjudicated."  ….
> Cheney [defense counsel] did not call a single witness, never objected or asked a
> question on cross-examination and passed up every opportunity to present a
> position contrary to that of Hempel [the plaintiff].  In short, there was no
> opposition to any of the evidence or arguments proffered….  As Cheney put it in
> response to deposition questioning, "[t]he Hempels put on a case and we did not
> refute it.  It was not what I would call a real trial, no."
> The above facts demonstrate that [counsel for the respective parties]
> maneuvered the proceedings to achieve the results they wanted with an
> expectation that the characterization of a "trial proceeding" could make
> legitimate that which was a sham.  To fail to find collusion in fashioning an
> unreasonable settlement under these circumstances would be to authorize
> manipulation which compromises the integrity of the adversary system.  A
> stamp of judicial approval must be more than a rubber stamp of a one-sided
> presentation when it is presented under the guise of a dispute.  Defendant
> insurers are entitled to partial summary judgment on the issue of collusion as a
> matter of law.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

Id. at 1506-1507, 1507-1508 and 1509.  Federal respectfully requests that the Court carefully

review the settlement documentation in the underlying Hawkins litigation, the transcript of

Hawkins' damages "trial," the judgment entered by the Texas Court, and the furnished

deposition testimony of the Bank's defense counsel.  [App. Exhibits 13-15]  The conclusion is

irrefutable that the parties to the Hawkins litigation followed almost exactly the same improper

playbook as the parties before Judge Conway in the Westerfield case.  In particular, Federal

would note the following points:

1.   As in Westerfield, the Bank did not present any liability defenses, even though counsel for the Bank testified in deposition in the present case that he believed the Bank had meritorious defenses to liability and had a strong opinion Hawkins' damages claims were exaggerated.  [App. 228, 229]

2.   In Westerfield, Judge Conway noted that the state trial court judge appeared not to be aware that the parties' settlement agreement had given the defendant a 10% stake in recovery of the judgment to be enforced against the absent insurers.  In the present case, the record of the trial proceedings gives rise to much the same inference:  counsel did not orally disclose the Bank's 40% judgment stake, and the Court was not timely provided a copy of the settlement agreement, as the original agreement was being circulated for signature in the courtroom during the trial proceeding itself.  [App. 252]

3.   Whereas in Westerfield the defendant called no witnesses at all, counsel for the Bank in the Hawkins trial called only the current Bank president as a witness who simply informed the Court that the Bank could afford no voluntary settlement payment more than $200,000.  [App. 362]

4.   In Westerfield, the defendant took back a 10% interest in the judgment; here, the Bank acquired a 40% interest in Hawkins' damages judgment - - an amount which far exceeds the Bank's actual $200,000 settlement payment, incurred attorneys fees and litigation costs.

5.   In the present case, as in Westerfield, defense counsel did not oppose the damages requested by the plaintiff, and proposed no alternative damages "number" to the Court.  [App. 371]

6.   Judge Conway's above-quoted Westerfield opinion cites to defense counsel's admission (in deposition) that the damages assessment trial "was not what I would call a real trial, no"; in the present case, defense counsel for the Bank likewise admitted in deposition that "the atmosphere was different" and "it wasn't a trial on damages, so to speak."  [App. 252]

24

In sum, for all the reasons detailed by Judge Conway in the <u>Westerfield</u> case, the judgment obtained in the Hawkins litigation is collusive, against public policy and the product of unclean hands.  This Court, like Judge Conway, must repudiate rather than enforce the judgment that entered through collusive proceedings in the Hawkins case.[12]

### 2.   <u>The Hawkins Texas State Court Judgment Which Plaintiffs Ask this Court to Enforce Is Legally Infirm and Void</u>

Under Judge Conway's <u>Westerfield</u> decision, Hawkins' damages judgment is void and unenforceable against Federal under New Mexico law.[13]  Significantly, the collusive settlement and judgment also violates Texas law, and counsel in the Hawkins litigation were well aware of this fact.  Defense counsel for the Bank admitted in deposition that Hawkins' co-counsel, Michael O'Brien, a retired Texas judge, advised other counsel in the course of settlement discussions that the type of settlement being proposed no longer was permitted under Texas law. [App. 233, 234][14]  In view of this information, counsel for the parties decided to include a clause in their settlement agreement that the settlement was governed by New Mexico law.  [App. 261]

---

[12]  As this Court previously observed in <u>State Farm Fire & Cas. Co. v. Ruiz</u>, 36 F. Supp. 2d 1308, 1319 (D. N.M. 1999), wherein the Court cited Judge Conway's <u>Westerfield</u> decision with approval, under New Mexico law even an "insurer who unjustifiably refuses to defend its insured is only bound to a settlement that is reasonable and was entered in good faith."  <u>See</u> <u>also</u> <u>Rummel v. Lexington Ins. Co.</u>, 1997-NMSC-041, ¶ 61,123 N.M. 752, 766 ("A settlement that is the product of fraud or collusion at the expense of a nonparticipating insurer would release that insurer from any obligations under the settlement.").

[13]  The Tenth Circuit Court of Appeals, in affirming Judge Conway's disposition of the case at the conclusion of all proceedings in the U.S. District Court, ruled that the collusive settlement and judgment relieved the insurers from any obligation to indemnify their insured under the policy.  <u>Continental Cas. Co. v. Hempel</u>, 4 Fed. Appx. 703 (Westlaw) at 18, 20-21.

[14]  This is confirmed by <u>State Farm Fire & Cas. Co. v. Gandy</u>, 925 S. W. 2d 696, 714, 719 (Tex. 1996).

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

Because the collusive settlement and judgment entered in the Hawkins litigation are contrary to <u>both</u> the law of Texas and New Mexico, it was improper for the Texas Court to approve the settlement and enter the judgment.  There is no sound basis for this Court to enforce, or defer in any way to, a Texas state court judgment that not only violates New Mexico law and public policy, but never should have been entered in a Texas judicial proceeding.

## V.   <u>CONCLUSION</u>

For all the foregoing reasons, Federal Insurance Company respectfully requests that the Court issue an order granting it Summary Judgment with respect to each and every one of the claims and causes of action asserted by Plaintiffs, and awarding Federal the relief requested in its First Amended Counterclaim for Declaratory Relief.

Respectfully submitted,

SELTZER CAPLAN MCMAHON VITEK

By:  */s/ James Delphey*_____
   James P. Delphey Esq.
   Andrea N. Myers, Esq.
   2100 Symphony Towers
   750 B Street
   San Diego, CA  92101
   Tel:  619-685-3003
   Fax:  619-702-3100
   delphey@scmv.com
   myers@scmv.com

   -and-

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT FEDERAL INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT

HINKLE, HENSLEY, SHANOR & MARTIN, LLP

By:  */s/ Gary Larson*_____
       Thomas M. Hnasko, Esq.
       Gary W. Larson, Esq.
       218 Montezuma
       P.O. Box 2068
       Santa Fe, NM  87504
       Tel:  505-982-4554
       Fax:  505-982-8623
       thnasko@hinklelawfirm.com
       glarson@hinklelawfirm.com
Attorneys for Defendant Federal Insurance
Company

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2012, I filed the foregoing **DEFENDANT FEDERAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Christopher P. Bauman, Esq.     cpb@bdllawfirm.com
Mark C. Dow, Esq.             mcd@bdllawfirm.com
Mike O'Brien, Esq.           mike@moblaw.com

                     /s/ James P. Delphey

                     James P. Delphey, Esq.