**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**WESTERN HERITAGE BANK f/k/a**
**MESILLA VALLEY BANK, JERRY W.**
**BELL, III, and LUCINDA LOVELESS,**

     **Plaintiffs,**

**vs.**                    **Case No. 2:11-CV-00630 MV/WPL**

**FEDERAL INSURANCE COMPANY,**

     **Defendant.**

## <u>DEFENDANT FEDERAL INSURANCE COMPANY'S RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

### I.     <u>INTRODUCTION AND SUMMARY</u>

The sole issue presented by Plaintiffs' Motion for Partial Summary Judgment is whether or not Federal Insurance Company ("Federal") was justified in declining to defend the third-party litigation claim repeatedly tendered by Plaintiffs.[1]  To determine this issue, the Court needs to analyze and decide whether any reasonable contention can be made that the tendered claim gives rise to potential coverage under the policy issued by Federal.  As is demonstrated below,

---

[1] The third-party claimant (Hawkins) had leased its commercial premises for use as a fast food restaurant to its tenant, Lujo.  Lujo was a customer of the Bank, and Hawkins was not.  Hawkins in its lawsuit claimed the Bank and related defendants: (1) improperly placed deeds of trust and other liens on the leasehold property to secure the Bank's loans to Lujo; (2) thereafter wrongfully refused to release the liens as demanded by Hawkins, even after Lujo had left the premises following default and foreclosure; and (3) thereby caused Hawkins to sustain substantial damages and impaired its efforts to re-lease the premises on a timely and market-competitive basis.

Plaintiffs advance various assertions and theories in an attempt to locate coverage under the policy, but such assertions and theories are legally insufficient, because they are not based on a reasonable interpretation of the policy terms.  The Court as a matter of law should reject Plaintiffs' position for each of these reasons:

1.    Plaintiffs ignore settled principles of insurance contract interpretation, including the basic principles: (a) that the words in an insurance contract are to be given their plain, natural and ordinary meaning; and (b) that the terms of an insurance contract need to be construed not in isolation but in the context of the entire insurance policy as a whole.  Here the record is clear that Plaintiffs purchased a portfolio or "package" policy from Federal, which provides, among other coverages, not only Directors and Officers Liability Coverage but also Bankers Professional Liability Coverage ("BPL").  Plaintiffs realize that the BPL Section of the policy is the Section that responds to claims for the Bank's lending-related activities - - but also realize it expressly exempts such claims brought by non-customers of the Bank (such as Hawkins).  Accordingly, Plaintiffs entirely ignore the BPL Section of the package policy in their analysis, even to the point of pretending that they purchased only a "D&O policy" from Federal.

2.    Struggling to assert that the Hawkins litigation somehow should trigger D&O coverage, Plaintiffs unreasonably contend that the Court should not give effect to the D&O Section's clear and broad exclusion of coverage for "any **Claims** … based upon, arising from, or in consequence of the performing or failure to perform… **Lending Services"** - - an exclusion that on its face pertains to Hawkins' complaint about improper, damaging liens imposed to secure loans made by the Bank.  Plaintiffs assert that the express **Lending Services** exclusion should be ignored or overruled, based on a contorted and illogical argument that purely definitional language elsewhere in the policy somehow should be read to re-include coverage for the Hawkins claim.

3.    Equally untenable is Plaintiffs' theory that the **Lending Services** exclusion should no longer apply to the liens imposed by the Bank on the Hawkins leasehold, after Lujo vacated the premises following default and foreclosure.  Plaintiffs' theory in this regard amounts to the irrational argument that the Bank - - by stubbornly refusing to release its liens even after Lujo left the premises - - - can create insurance coverage for the Hawkins claim where no coverage existed before.  Because the **Lending Services** exclusion expressly and broadly applies to matters "arising from, based upon or in consequence of" the Bank's **Lending Services**, this exclusion plainly attaches to the Bank's continuing conduct with respect to the liens.

2

4.      Plaintiffs fail to identify any allegations or claims made in the Hawkins litigation that do not relate to the Bank's wrongful conduct in refusing to release the liens on the Hawkins property.  As Plaintiffs, their expert, and counsel for the Bank in the Hawkins case each have admitted, the gravamen of the Hawkins litigation from start to finish was that the Bank wrongfully damaged Hawkins by refusing to release the liens upon Hawkins' demands.  There is simply no other theory of wrongdoing made by Hawkins against the Plaintiffs.

Because there is no reasonable basis to find coverage for the Hawkins lawsuit under the terms of the policy, Federal justifiably declined to defend the Hawkins litigation.  Accordingly, based on the reasons set forth below and in related briefing on Federal's own Motion for Summary Judgment,[2] Federal respectfully requests that the Court rule as a matter of law that Federal did not breach any duty to defend in this case.

## II.      RELEVANT LEGAL STANDARDS

### A.      Whether An Insurer Has A Duty To Defend

The duty of an insurer to defend an insured against a third-party claim is broader than its duty to indemnify, because the duty to defend is triggered when potential coverage under the policy reasonably is shown to exist.  See, e.g., Valley Improvement Ass'n v. U.S. Fidelity and Guaranty Corp., 129 F. 3d 1108, 1117 (10th Cir. 1997); State Farm & Cas. Co. v. Ruiz, 36 F. Supp. 2d 1308, 1312 (D.N.M. 1999).  However, the duty to defend is not unlimited, and an

---

[2] Federal's concurrently-filed Motion for Summary Judgment requests summary judgment as to all Plaintiffs' claims based on either or both of these two independent grounds: (1) Federal correctly determined that there was no coverage (for either defense or indemnity) under its policy for the Hawkins claim; and (2) Plaintiffs are barred from any relief against Federal or under the policy because the Bank settled, and stipulated to judgment in, the Hawkins litigation in a collusive manner that violates New Mexico law and public policy.  The documents filed as Exhibits to Federal's Motion for Summary Judgment are contained in a separate Appendix of Exhibits cited herein in this format: App. ___.  Additional documents cited to rebut assertions made by Plaintiffs in their present Motion are included in the Supplemental Appendix of Exhibits (filed herewith) and cited in this format:  S.App. ___.

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

insurer justifiably may refuse to defend when the allegations of the underlying claim fail to implicate coverage under the policy.  See, e.g., State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 985 (10th Cir. 1994); American Employers' Ins. Co. v. Continental Cas. Co., 85 N.M. 346, 347, 512 P. 2d 674, 675 (1973) (Insurer's duty to defend "is determined by the allegations of the petition filed by a claimant against the insured, the issue being whether the allegations are sufficient to state any claim within the terms of the policy.").

Thus, whether or not there is a duty to defend is determined by "the allegations of the injured party's complaint."  Mhoon, supra, at 985.  If the complaint fails to state facts reasonably suggesting coverage, or if the facts stated in the complaint reasonably refute coverage, then the insurer is not obligated to defend.  Id.; American Employers' Ins. Co., supra, at 85 N.M. 346, 347; 512 P. 2d 674, 675 (1973).  When an insurer relies upon an express policy exclusion as negating a duty to defend, the insurer properly may decline to defend, provided the exclusion is not subject to any other reasonable interpretation.  See, e.g., Graystone Const., Inc. v. Nat'l Fire & Marine Ins. Co., 661 F. 3d 1274, 1284 (10th Cir. 2011); Frontier Insulation Contrs. v. Merchant's Mut. Ins. Co., 91 N.Y. 2d 169, 175, 690 N.E. 2d 866, 868-869 (1973).

**B.      Insurance Contract Interpretation**

"The interpretation of an insurance contract is a matter of law about which the court has the final word."  Rummel v. Lexington Ins. Co., 1997-NMSC-04, ¶ 60, 123 N.M. 752, 766.  As is the case with other contracts, the primary goal when interpreting an insurance policy is to ascertain "the intentions of the contracting parties with respect to the challenged terms at the time they executed the contract."  Ponder v. State Farm Mut. Auto. Ins. Co., 2000-NMSC-033, ¶ 11, 129 N.M. 698, 702 (internal citation omitted).  The terms of an insurance contract must be

4

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

interpreted in their usual, ordinary and popular sense, and "[r]esort will not be made to strained

construction for the purpose of creating an ambiguity where no ambiguity in fact exists."

Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶17, 139 N.M. 24, 26, 28.  Exclusions

in insurance contracts "shall be enforced as long as their meaning is clear and they do not

conflict with statutory law."  Chavez v. State Farm Mut. Auto. Ins. Co., 87 N.M. 327, 329, 533

P. 2d 100, 102 (1975).  An exclusion in an insurance policy that is broadly phrased must be

interpreted as written.  Fed. Ins. Co. v. Tri-State Ins. Co., 157 F. 3d 800, 804-805 (10th Cir. 1998)

[declining to assign the broad phrase "arising out of" a narrow reading "simply because it

appears in the context of an exclusionary clause."].

Should any ambiguity or question appear to exist, a court in New Mexico "will first look

to whether … meaning and intent is explained by other parts of the policy."  Rummel, supra,

1997-NMSC-041, ¶ 20, 123 N.M. at 766.  "If the ambiguity cannot be resolved by examining the

other policy provisions, we look to extrinsic evidence, such as the premiums paid, the

circumstances surrounding the agreement, the parties' conduct, and parties' oral expressions of

intent."  Bird v. State Farm Mut. Auto. Ins. Co., 2007-NMCA-088, ¶ 12, 142 N.M. 346, 350.

The resolution of ambiguities in an insurance policy is a matter of law for the court, and while

genuine ambiguities are usually construed against the insurer, courts must adopt the

interpretation of the policy "that is most in accord with reason and the probable expectations of

the parties."  Rummel, supra, 1997-NMSC-041 at ¶ 19, ¶ 22, 123 N.M. at 758-59.

## III.   RESPONSE AND REBUTTAL TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

Rather than provide a concise statement of facts supporting their Motion, Plaintiffs recite

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

fourteen pages of mostly argument and conclusions they christen "Undisputed Facts." Federal specifically disputes, and contends a genuine issue exists concerning, the following "Facts" (as numbered by Plaintiffs) on the following grounds: 5 [counsel's letter is unsupported hearsay]; 11 [counsel's letter is unsupported hearsay; the cited pleadings don't provide support]; 14 [misleading - - Federal had no obligation to conduct investigation beyond fully analyzing the tendered claim for potential coverage, which it did; Federal disputed many contentions made in Dow tender letter]; 17 [misleading - - Federal raised issue but never concluded Bell not an individual insured]; 19 [cited documents do not support "fact" as stated]; 26 [selective and misleading paraphrase of portion of Chavez testimony; see also Ex. "J" at 80:1-25; 82:10-17]; 27 [conclusory, argumentative and not established by cited testimony]; 28 [conclusory, argumentative and not established by cited testimony]; 29 [selective and misleading paraphrase of Chavez testimony; see also Ex. "J" at 85:15-86:4]; 30 [selective and misleading paraphrase of Chavez testimony; see also Ex. "J" at 85:15-86:4]; 31 [argumentative; disputed legal conclusion]; 32 [counsel's letter and the cited testimony are unsupported hearsay; the cited pleadings don't provide support]; 33 [argumentative; disputed legal conclusion]; 34 [counsel's letter is unsupported hearsay; cited pleadings don't provide support that Bank acquired ownership or control of "franchise"]; 35 [argumentative; disputed legal conclusion]; 37 [argumentative; disputed legal conclusion]; 38 [argumentative; disputed legal conclusion]; 39 [argumentative; disputed legal conclusion]; 40 [untrue that Roosa is employed as Federal's in-house attorney; the cited letters show she is employed as claims examiner; misleading description and selective quotation of Roosa deposition; see also Ex. "O" 116:1-24]; 41 [misleading description and selective quotation of Roosa deposition; see also Ex. "O" 116:1-24];

6

42 [misleading description and selective quotation of Roosa deposition; <u>see</u> <u>also</u> Ex. "O" 116:1-24]; <u>43</u> [argumentative and misleading paraphrase of cited letter]; <u>44</u> [argumentative; disputed legal conclusion]; <u>45</u> [misleading loose paraphrase; cited testimony does not provide support]; <u>46</u> [disputed legal conclusion; excerpted testimony of lay witness Spears taken out of context in response to an improper hypothetical question; <u>see</u> <u>also</u> Ex. "W" 34:12-19; 127:12-24]; <u>47</u> [argumentative and misleading; the cited testimony disputes rather than supports the alleged "fact;" <u>see</u> <u>also</u> Ex. "W" 35:3-36:24]; <u>48</u> [argumentative; disputed legal conclusion]; <u>49</u> [argumentative and conclusory]; <u>50</u> [misleading; inaccurate excerpt of policy language]; <u>51</u> [argumentative; misleading paraphrase of cited testimony]; <u>52</u> [argumentative, ambiguous and misleading paraphrase of cited testimony]; <u>53</u> [argumentative legal conclusion]; <u>54</u> [argumentative, ambiguous and confusing legal conclusion]; <u>55</u> [argumentative; disputed legal conclusion]; <u>56</u> [argumentative, ambiguous and confusing legal conclusion; under the BPL Section of the policy **Professional Services** expressly includes **Lending Services**]; <u>57</u> [argumentative; disputed legal conclusion]; <u>58</u> [argumentative; disputed legal conclusion]; <u>64</u> [false conclusion, unsupported by the cited testimony - - Exclusion 7.b. expressly does <u>not</u> require that the Bank be a party to the contract for the Exclusion to apply; <u>see</u> App. 388 (Expert Report of Morris J. Chavez)]; <u>65</u> [inaccurate and misleading paraphrase]; <u>66</u> [ misleading conclusion; D&O coverage only applies to a claim alleging a Wrongful Act by an employee in a "managerial or supervisory capacity;" App. 042]; <u>67</u> [legal conclusion unsupported by cited Chavez testimony; <u>see</u> <u>also</u> response to number 66 above]; <u>68</u> [misleading and argumentative conclusion; Ex. "P" is not the entire package policy but just the policy's D&O coverage Section].

      Federal also specifically controverts the argumentative and conclusory headings C.

through G. improperly inserted into Plaintiffs' listing of allegedly "Undisputed Facts."

## IV.   PLAINTIFFS HAVE SET FORTH NO REASONABLE INTERPRETATION OF THE POLICY THAT LOCATES POTENTIAL COVERAGE FOR THE HAWKINS CLAIM

**A.   Plaintiffs Improperly Ask This Court To Read The Directors & Officers Liability Section Of Federal's Package Policy In Isolation From The Bankers Professional Liability Section**

Remarkably, the Court from reading Plaintiffs' Memorandum Brief and supporting Exhibits would draw the conclusion that the Bank purchased only a "D&O policy" from Federal. Nowhere do Plaintiffs acknowledge that they in fact purchased a package policy from Federal - - which includes other coverages (for which the Bank paid separate, additional premiums [App. 010]), such as BPL, in addition to D&O coverage.  Indeed, Plaintiffs have provided as their Exhibit "P" only the D&O Coverage Section of the policy for the Court's review.  Plaintiffs obviously want to focus the Court's attention exclusively on the D&O Section, in isolation from the rest of the policy.  [App. 010]

When the policy is read and interpreted as a whole, as the canons of policy interpretation require, it is apparent that Plaintiffs focus solely on the D&O Section for a reason:  Plaintiffs realize that the BPL Section - - which is the Section that provides coverage for **Lending Services** and/or **Professional Services** engaged in by the Bank - - expressly exempts coverage for **Lending Services**-related claims brought by parties (such as Hawkins) that are not customers of the Bank.  Accordingly, since potential BPL coverage thus is a dead-end, Plaintiffs attempt (misguidedly and incorrectly) to locate coverage for the Hawkins claim in the D&O Section, even though it expressly excludes coverage for the Bank's lending or professional activities, such

8

as those complained about by Hawkins.[3]  Here are the relevant policy provisions from both the

BPL and D&O Sections the Court needs to consider to determine the coverage issues presented

by the parties' respective Motions for Summary Judgment:

1.    **The Bankers Professional Liability Section of the Policy provides coverage for Lending-Related Activities of the Bank, (as Plaintiffs concede) does not reach the Hawkins claim.**

Under the BPL Section of the policy, the Bank purchased a Lenders Liability Coverage

Endorsement, which subject to its terms expanded coverage for **Professional Services** rendered

by the Bank to specifically include **Lending Services**.  [App. 062]  **Lending Services** are

defined as:

> Any act performed by an **Insured** for a **Lending Customer** of the Organization in the course of extending or refusing to extend credit or granting or refusing to grant a loan or any transaction in the nature of the loan, including any act of restructure, termination, transfer, repossession or foreclosure.  [App. 050]

Here the record is clear and undisputed that the Bank extended credit to Lujo and placed liens on

the premises occupied by Lujo to secure such loans.  These liens (the subject of Hawkins'

lawsuit against the Bank and related defendants) plainly were imposed for the benefit of Lujo, a

**Lending Customer** of the Bank, as a condition of the Bank making, continuing or restructuring

the loans Lujo had requested.

The types of claims which give rise to potential coverage under the BPL Section include

---

[3] It is hardly surprising that the D&O Section would not cover the day-to-day professional services rendered by the Bank.  As both parties' respective insurance claims experts have opined, D&O coverage primarily relates to the corporate-level exposures of the Bank, its directors and officers with respect to stakeholders in the enterprise. [App. 386; S.App. 001].  An example is the 2007 regulatory subpoena of the Bank, for which Federal acknowledged coverage under the D&O Section of the policy [App. 414].  In arguing for D&O coverage for the Hawkins wrongful lender's lien claim, Plaintiff essentially are trying to place a square peg in a round hole.

9

civil proceedings, but only such proceedings "commenced by the service of a complaint or similar pleading … by or on behalf of a **Customer** against an **Insured** for a **Wrongful Act**…" [App. 049]  Thus, unless Hawkins qualifies as **Customer** of the Bank, its civil proceeding does not constitute a claim within the scope of coverage of the BPL Section.  As Plaintiffs and their expert each have acknowledged, Hawkins is <u>not</u> a **"Customer"** under the relevant policy definition:

> Any person or entity that … has or had a written agreement with the Organization; or … submitted a written application to the Organization … to receive Professional Services."  [App. 049][4]

Based on analysis of these straightforward BPL Section provisions, Federal denied coverage for the tendered Hawkins claim under the BPL Section, and explained its position on several occasions in written correspondence it provided to Plaintiffs or their representatives. [App. 175, 181, 188, 201]  Plaintiffs have abandoned any argument that Federal's declination of coverage for the Hawkins claim under the BPL Section is incorrect.

Before leaving the BPL Section of the policy, it is important that the Court review and have in mind the definition of **Professional Services** set forth in the BPL Section under the Lender Liability Coverage Endorsement which the Bank purchased:

---

[4] Common sense and common experience confirm that most claims against a bank for lending-related services are brought by customers in the lending relationship.  The BPL Section of the policy, as purchased by Plaintiffs, would reach and potentially cover such claims.  Indeed, employing consistent coverage analysis, Federal stepped up to acknowledge coverage for just such a claim made against the Bank a year before the Hawkins claim arose.  [App.  407]  Had the Bank purchased an optional endorsement extending BPL coverage to claims brought by non-customers [App. 421] (which the Bank did not), Federal would have acknowledged potential BPL coverage for the Hawkins claim as well.

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

**Professional Services** means:

a. **Loan Servicing** and only those services performed or required to be performed by an **Insured** for or on behalf of a **Customer** of an **Insured**: i. for a fee, commission or other monetary consideration, ii. for a fee, commission or other monetary consideration would usually be received by the **Insured** but for business or other reasons is waived by the **Insured**, or iii. for other remuneration which inures to the benefit of such **Insured**; and

b. **Lending Services**.
   **Professional Services** shall not include: (1) medical or healthcare services, real estate appraisal services, architectural or construction management services, the practice of law or the rendering of legal services, or (2) services performed by any entity which the **Insured** shall have acquired ownership or control as security for a loan, lease or other extension of credit. [App. 062]

Thus, **Professional Services**, a covered subject matter under the BPL Section of the Bank's policy, expressly extends to and includes **Lending Services** (as defined in the policy) and expressly <u>does not</u> include the items listed in (1) and (2) above, among which are "the practice of law or the rendering of legal services" and "services performed by any entity" over which the Bank "acquired ownership or control as security for a loan, lease or other extension of credit."

2.    <u>**The D&O Liability Section of the Policy expressly and broadly excludes clams relating to Lending Services of the Bank such as the Hawkins claim**</u>

Unlike the BPL Section of the policy, which through the Lenders Liability Coverage Endorsement expressly <u>includes</u> coverage for **Lending Services** as well as other **Professional Services** rendered by the Bank, the D&O Section expressly and broadly <u>excludes</u> all such coverage. D&O Section 4.j states:

The Company shall not be liable for **Loss** on account of any **Claim**: … based upon, arising from, or in consequence of the performing or failure to perform **Professional Services** or **Lending Services**. [App. 022, 024]

As set forth more fully below, this broadly-worded exclusion applies to the Hawkins claim, and precludes any reasonable argument that potential coverage for the Hawkins litigation is present under the D&O Section of the policy. In the context of the entire policy, providing an express

11

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

inclusion of coverage for **Lending Services** under the BPL Section, while at the same time

providing an express exclusion for **Lending Services** under the D&O Section, is fair, logical and

makes good practical sense.  No reasonable insured wants to pay twice under a package policy

for the same coverage, which would be the case if both the BPL and the D&O lines of coverage

(for which separate premiums were charged [App. 010]) covered **Lending Services**-related

claims.  Federal's position is that the above-quoted **Lending Services** exclusion is dispositive

and refutes Plaintiffs' position that there is coverage for the Hawkins suit under the D&O

Section of the policy.

**B.      The Broad Form Lending Services Exclusion Applies By Its Terms To The Bank's
         Long-Continuing Refusal To Release The Liens It had Placed On The Hawkins
         Property**

The **Lending Services** Exclusion under the D&O Section is what is known in the

insurance industry as a "broad form" or "absolute" exclusion, i.e., it has deliberately been written

in broad and sweeping language leaving no doubt that the Exclusion is intended to preclude

coverage for any and all claims falling within the Exclusion's broad and general terms.  Once

again, the **Lending Services** Exclusion prong of Exclusion 4.j. provides as follows:

> The Company shall not be liable for **Loss** on account of any **Claim**: … based
> upon, arising from, or in consequence of the performing or failure to perform …
> **Lending Services**.  [App. 022, 024]

Notwithstanding the breadth of this language, Plaintiffs contend that the 4.j. Exclusion should be

deemed inapplicable with respect to the wrongful lien claim made by Hawkins against the Bank.

The overwhelming majority of state and federal courts - - when construing exclusions in

commercial insurance policies that utilize the broad phrase "arising out of," "arising from" or

similar language of broad scope - - have ruled that such "broad form exclusions" as a matter of

law must be interpreted in a manner that gives effect to the broad language of exclusion

intentionally used.

1. *Federal Ins. Co. v. Tri-State Ins. Co.,* 157 F.3d 800, 804-805 (10th Cir.1998) "[T]he phrase 'arising out of' should be given a broad reading such as 'originating from' or 'growing out of' or 'flowing from' or 'done in connection with'- - that is, it requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense." "Because we do not believe that we can make a principled distinction in meaning simply based upon where in the contract the phrase 'arising out of' appears, we decline to assign it a more restrictive meaning simply because it appears in the context of an exclusionary clause.";

2. *Nelson v. State Farm Mut. Auto. Ins. Co.,* 419 F.3d 1117, 1120 (10th Cir. 2005) [In Colorado, "[t]he court has noted that "the language 'arising out of' means to 'originate from,' 'grow out of,' or 'flow from.' It does not require a strict causal connection ...some causal connection suffices."];

3. *James River Ins. Co. v. Ground Down Engineering, Inc,.* 540 F.3d 1270, 1275 (11th Cir. 2008) ["The Florida Supreme Court held that the phrase 'arising out of' is *not* ambiguous and should be interpreted broadly… "the term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.' " ...To have arisen out of something, there must be "some causal connection, or relationship" that is "more than a mere coincidence" but proximate cause is not required. *Id.* "[T]he phrase 'arising out of' contemplates a more attenuated link than the phrase 'because of.'" (internal citations omitted)];

4. *Zurich Specialties London Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*, 650 F. Supp. 2d 1064, 1070 (C.D. Cal. 2009) [phrase 'arising out of' in an exclusion "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship"];

5. *Murray v. Greenwich Ins. Co.,* 533 F.3d 644, 649 (8th Cir. 2008) ["The phrase "arising out of" has been given broad meaning by Minnesota courts…The Minnesota Supreme Court… [held] a "'[b]ut for' causation, i.e., a cause and result relationship, is enough to satisfy the provision of the policy." *Id.* (quotation omitted);

6. *Ferguson v. General Star Indem. Co.*, 582 F. Supp. 2d 91, 99 (D. Mass. 2008) ["Arising out of" in exclusion "suggests a causation more analogous to 'but for' causation … . The phrase 'arising out of' is generally understood to mean

13

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

'originating from,' 'growing out of,' 'flowing from,' 'incident to,' or 'having connection with,' … . (C)onsider the source from which the plaintiff's personal injury originates rather than the specific theories of liability alleged"];

7.   *Forum Ins. Co. v. Allied Secur. Inc.,* 866 F.2d 80, 82 (3d Cir.1989) [Courts in Pennsylvania have uniformly held that "arising out of means causally connected with, not proximately caused by. But for causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy." (citations omitted)];

8.   *National Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Liquids, Inc.*, 271 F. Supp. 2d 926, 932-34 (S.D. Tex. 2003), aff'd, 88 Fed. Appx. 725 (5th Cir. 2004) ["(T)he language 'arising out of' in a policy exclusion leads to 'a broad, general, and comprehensive interpretation' of the exclusion. 'A claim need only bear an *incidental* relationship to the described conduct for the exclusion to apply.'" Accordingly, since the exclusion was written to apply to claims "arising out of" pollution, the exclusion applied if the loss would not have existed "but for the pollution") (emphasis in original)];

9.   *Spirtas Co. v. Federal Ins. Co.,* 521 F.3d 833, 835-36 (8th Cir. 2008) [Under Missouri law, "[t]he district court correctly noted the term "arising from" is construed broadly such that an exclusion precluding insurance coverage for claims arising from a contract not only applies to claims sounding directly in contract but also to claims sounding in tort as long as they "flowed from or had their origins in the breach of the [ ] contract." (internal citations omitted)];

10.   *Atlantic Cas. Ins. Co. v. W. Park Associates, Inc.,* 585 F. Supp. 2d 323 (E.D. N.Y. 2008) [Under New York law, "arising out of" is "interpreted as using a 'but for' test." *Atlantic* involved an exclusion for injuries "arising out of the actions of independent contractors/subcontractors for or on behalf of any insured." The court held "an injury is excluded from policy coverage if the loss is incurred 'but for' the operations performed by the independent contractor... Stated differently, if no injury could have occurred without the activity excluded by the policy, there is no coverage."];

11.   *Ohio Cas. Ins. Co. v. Continental Cas. Co.*, 279 F. Supp. 2d 1281, 1284 (S.D. Fla. 2003) ["the language "arising out of" is not ambiguous….'Arising out of' are words of much broader significance then [sic] 'caused by.' They are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or in short, 'incident to or having connection with,' the use of the car."(internal citations omitted)];

12.   *Allstate Ins. Co. v. Pierce*, 271 Fed. Appx. 416, 417–18 (5th Cir. 2008) (Under Mississippi law, "arising out of" in exclusion means "originating from, having its origin in, growing out of, or flowing from");

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

13.     *Scottsdale Ins. Co. v. Texas Sec. Concepts and Investigation*, 173 F.3d 941, 943 (5th Cir. 1999) [Under Texas law, an exclusion for injury "arising out of" assault eliminates coverage for false imprisonment claim because, by virtue of the phrase "arising out of," "a claim need only been an incidental relationship to the described conduct for the exclusion to apply"];

14.     *Holmes Group, Inc. v. Federal Ins. Co.*, 2005 WL 4134556 (D. Mass.) [enforcing a broad application of the phrase "arising from," explaining that "[a]rising out of" means generally 'flowing from' or 'having its origin in.'  It held that the tort claims "all originate from the fact that Thermtrol's thermal protectors allegedly did not meet the specifications Holmes required under its agreements." "But for the defectiveness of the protectors, Holmes would not have incurred" the additional claims. As such, they are manifestly damages arising from a breach of contract… and are, accordingly, barred from coverage by Federal Policy."];

15.     *Atlantic Cas. Ins. Co. v. W. Park Associates, Inc.*, 585 F. Supp. 2d 323, 326 (E.D. N.Y. 2008) ["Arising out of" in exclusion meant "originating from" a "but for" test]; and

16.     *Beretta U.S.A. Corp. v. Federal Ins. Co.*, 117 F. Supp. 2d 489, 493-94 (D. Md. 2000), aff'd, 17 Fed. Appx. 250 (4th Cir. 2001) ["The phrase "arising out of" has been broadly interpreted under Maryland law… to mean originating from, growing out of, flowing from, or the like…the phrase "arising out of" implies only "but for" causation, rather than proximate or even some "intermediate" form of causation." (internal citations omitted)]. [5]

This cogent body of case law should control this Court's interpretation of the **Lending Services**

---

[5] Plaintiffs cite two cases (both applying Tennessee law) that declined to enforce a broad form exclusion consistent with its broad terms.  The pertinence of these cases appears questionable.  In <u>Allstate Ins. Co. v. Watts</u>, 811 S.W. 2d 883, 888 (Tenn. 1991), a homeowners policy (not a commercial liability policy) excluded coverage for "any loss arising out of maintenance of a motor vehicle."  The insured's friend (who had sued the insured) was badly burned while assisting the insured change brake pads on his vehicle when a pan of oil ignited.  The court ruled that causes besides automobile maintenance contributed to the injury and refused to apply the broad form exclusion according to its terms.  The second Tennessee case, <u>Fulton Bellows, LLC v. Fed. Ins. Co.</u>, 662 F. Supp. 2d 976, 987 (E.D. Tenn. 2009) quoted language from <u>Allstate</u>, <u>supra</u>, with approval and refused to grant the insurer summary judgment in an employment discrimination case under a broad form "prior acts" exclusion.  The <u>Fulton</u> court, however, expressly noted that there was a factual dispute whether the wrongful acts arose before or after the policy period, and expressly approved the principle that "the courts should avoid construing the language of [an] exclusion so narrowly that its purpose is undermined."  <u>Id</u>. at 986.

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

Exclusion which is central to the coverage dispute in this case.  Indeed, the language of the **Lending Services** Exclusion in the D&O Section of Federal's policy is even broader in its terms than the exclusionary provisions discussed in the above cases, most of which involve clauses containing the phrase "arising from" or "arising out of."  The 4.j. Exclusion at issue in this case uses even broader and more emphatic language to define its intended broad sweep:  coverage is excluded for all claims "<u>based upon, arising from, or in consequence of </u>the performing or failure to perform … **Lending Services.**" (Emphasis added.)

There is a good, logical and appropriate reason why Federal elected to use such a broad form exclusion in the D&O Section of its package policy.  As analyzed above, it is the BPL Section of the policy - - not the D&O Section - - that is designed and intended to provide coverage (if purchased by the insured) for the core professional and/or lending-related activities of the financial institution.  The D&O Section, on the other hand, is designed not to duplicate BPL coverage but to insure against corporate and corporate governance-related risks faced by the bank and its officers and directors.  <u>See</u> App. 386-388 (expert witness report of former New Mexico Superintendent of Insurance Morris J. Chavez).

Given this logical, modular structure of Federal's Forefront Portfolio Policy for Community Banks, and the compelling legal grounds for construing the broad form **Lending Services** Exclusion in the D&O Section in accordance with its broad intended sweep, there is no legal merit in Plaintiffs' assertions that the broad form **Lending Services** Exclusion should not apply to the Hawkins wrongful lien claim.  The liens about which Hawkins complained, and which the Bank continually refused to release, plainly arose from, were based upon and remained a continuing consequence of **Lending Services** the Bank had provided to Hawkins' tenant, Lujo.

16

The fact that Lujo eventually defaulted and vacated the premises does not alter the indisputable underlying fact that the liens had been placed on the Hawkins property in the course of, and as a direct result of, the Bank's lending relationship with Lujo.  But for that relationship, the liens would not have been placed on Hawkins' property, and Hawkins would have no wrongful lien claim against Plaintiffs.  Under the scope of the **Lending Services** Exclusion, it matters not that the Bank maintained its liens on Hawkins property even after it closed out its loans and lending relationship with Lujo.  The liens arose directly from, and in consequence of, those loans and lending relationship, and that is all the broad form D&O Section Exclusion requires.  Plaintiffs' contrary arguments must be rejected as a matter of law, based on the policy terms and the cogent case authorities summarized above.

**C.      Plaintiffs' Theory That The Professional Services Definition "Re-Includes" D&O Coverage For The Hawkins Claim Is Unsound And Cannot Be Sustained Under Any Reasonable Interpretation Of The Policy**

Federal has summarized its coverage analysis, and its rebuttal of Plaintiffs' contrary theories, at pages 15 through 17 of the Memorandum Brief supporting Federal's own Motion for Summary Judgment.  Federal incorporates that analysis by reference here.  In view of the assertions made by Plaintiffs in their Memorandum Brief, however, some additional points deserve emphasis.

Plaintiffs at page 1 of their Memorandum Brief assert that there are "specific exceptions" to the Section 4.j. **Lending Services** Exclusion relied upon by Federal.  Plaintiffs even go so far as to provide (as Appendix A) a graphic which lists what they allege are "exceptions" or "carve-outs" to Exclusion 4.j.  That graphic is not a fair or reasonable portrayal of the actual policy terms.  Exclusion 4.j. has <u>no</u> exceptions; it broadly states in its entirety as follows:

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

> The Company shall not be liable for **Loss** on account of any **Claims**: … based upon, arising from, or in consequence of the performing or failure to perform **Professional Services** or **Lending Services**.  [App. 022, 024]

This Exclusion must be construed according to its clear, express and broad terms:  there is no coverage under the D&O Section for <u>any</u> claim that is "based upon, arising from, or in consequence of the performing or failure to perform … **Lending Services"** by the Bank.  There is nothing in the definition of **Lending Services** that renders this Exclusion unclear or equivocal in any way.  In particular, here is the full definitional language of **Lending Services** under the D&O Section:

> **Lending Services** means any act performed by an **Insured** or a **Lending Customer** of the **Organization** in the course of extending or refusal to extend credit or granting or refusal to grant a loan or any transaction in the nature of the loan, including any act of restructure, termination, transfer, repossession or foreclosure.  **Lending Services** shall not include any **Professional Service**. [App. 050]

The final sentence "**Lending Services** shall not include any **Professional Service**" certainly does not restore coverage for **Professional Services** under the D&O Section (as Plaintiffs assert). Exclusion 4.j. expressly is phrased in the disjunctive:  it expressly excludes coverage for <u>both</u> **Lending Services** and **Professional Services**.  Because the liens complained about by Hawkins squarely fall within the **Lending Services** fork of the Exclusion, application of Exclusion 4.j. to the Hawkins claim is proper and correct.  This plain and logical interpretation of Exclusion 4.j. in itself refutes Plaintiffs' assertions that coverage for the Bank's lien-related conduct somehow has been "excepted" or "carved-out" from Exclusion 4.j.

Plaintiffs nonetheless attempt to confuse the analysis by focusing on the definition for the term "**Professional Services**" contained in the D&O Section.  Because Federal is relying on the

18

"**Lending Services**" fork of Exclusion 4.j. rather than the **Professional Services** fork, this

analysis is entirely irrelevant and constitutes a red herring.[6]

---

[6] Plaintiffs argue (irrelevantly) that the definition of **Professional Services** under the D&O Section is unclear or potentially ambiguous because it lists certain items as falling outside the **Professional Services** definition. These items include "the practice of law or the rendering of legal services" and "services performed by any entity which the **Insured** shall have acquired ownership or control as security for a loan, lease or other extension of credit." Significantly, these same items identically were exempted from the definition of **Professional Services** appearing in the BPL Section, under which coverage for **Professional Services**-related claims is provided. It is thus plain from a reading of the policy as a whole that the intent of listing particular items as "not included" within the term **Professional Services**, is to make clear that these items do not fall within potential **Professional Services** coverage under the policy. The fact that essentially the same definition and limitation of **Professional Services** is repeated under the D&O Section does not change, but rather confirms, this analysis.

Plaintiffs appear to argue that because **Professional Services** is an excluded rather than a potentially covered term under the D&O Section, any exceptions from the definition of **Professional Services** should be construed as an "exclusion to an exclusion" rather than simply as items falling outside the definition of the term. That is not a logical or correct way to read purely definitional language in an insurance contract.

Even leaving aside this point and also the fundamental point that the **Lending Services** fork of Exclusion 4.j. is unaffected by Plaintiffs' parsing of the **Professional Services** definition, Plaintiffs' strained analysis does not create or find potential coverage under the D&O Section for either "Legal Services" or what Plaintiffs term "post-control entity services." Not only would the broad **Lending Services** Exclusion still negate potential coverage even if lender's liens are deemed to be "legal services," but it is plain that none of the Plaintiff **Insureds** - - the Bank, Mr. Bell or Ms. Loveless - - were practicing law or providing legal services in this case. Any legal services were provided by the Bank's outside attorneys, who were separately named as defendants by Hawkins [App. 97-98] and are not **Insureds** who may claim coverage under the policy. Plaintiffs' own expert expressly agrees. [S.App. 004] With respect to "post-control entity services," Plaintiffs' position (among its other defects) has no grounding in reality, since there is no allegation or showing that Plaintiffs ever actually acquired ownership or control of the entity known as Lujo Corporation. At most, the Bank foreclosed on certain assets and exercised its rights against Lujo under its liens, but this does not equate to "taking ownership or control" of the Lujo entity, as the referenced language would require.

In sum, on multiple grounds, Plaintiffs' contorted attempt to locate potential coverage within the D&O Section's definition of **Professional Services** must be rejected as legally infirm, illogical and insufficient to cast any doubt upon the legal merit of Federal's reliance on the **Lending**

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

Particularly revealing - - and particularly objectionable - - is the document labeled Appendix B to Plaintiffs' Memorandum Brief.  This document is entitled "EXCLUSION 4.j. WITH CUT AND PASTE DEFINITIONS."  Under the heading " or LENDING SERVICES," Plaintiffs in a confusing manner string together clauses and phrases from various policy language in an attempt to confuse and conflate (1) the definition of **Lending Services**, and (2) the terms of Exclusion 4.j. as it relates to **Lending Services**.  This misleading hodgepodge of terms juxtaposed together gives rise to a fictitious "alternative" version of the policy, that cannot be squared with a reasonable reading of the actual insurance contract.  In sum, Federal respectfully submits that Plaintiffs' creation of Appendix B demonstrates just how strained and tortured Plaintiffs' coverage position is: to support it, Plaintiffs have had to ignore the actual policy language and instead present the Court with a sham and counterfeit account of what the D&O Section of the policy actually says (1) in defining **Lending Services**, and (2) in broadly excluding all **Lending Services**-related claims from potential coverage.[7]

**D.    Contrary To Plaintiffs' Conclusory Assertion, All Claims Made By Hawkins In The Underlying Litigation Derive From The Bank's Activity Of Placing Liens On The Subject Property And Refusing To Release Such Liens**

Plaintiffs at pages 25-26 of their Memorandum Brief make this hollow and unsubstantiated assertion: "[B]ecause the underlying [Hawkins] petition contains claims for which [Federal] can not even make an argument that an exclusion applies, [Federal] should have

---

**Services** prong of Exclusion 4.j.

[7] Plaintiffs at p. 23 of their Memorandum Brief even go so far as to assert that the correct interpretation of Exclusion 4.j. is "a tangled mess."  As set forth above, however, the interpretation of the **Lending Services** fork of Exclusion 4.j. (relied upon by Federal) is clear and straightforward.  The only "tangled mess" resides in the obfuscatory Appendices A and B Plaintiffs have contrived and attached to their Memorandum Brief.

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

provided a defense for all the claims."  Notwithstanding this bold rhetoric, Plaintiffs themselves

fail to cite a single claim or allegation made by Hawkins (in any version of its Petition, which

went through several amendments) that fairly would fall outside the broad sweep of the **Lending**

**Services** Exclusion discussed above.

Indeed, the only claims of Hawkins that Plaintiffs reference to support their assertion are

the following pleaded causes of action:  "Slander of Title, Tortuous [sic] Interference, Tortious

Interference with Expected Contracts and Business Relations, Conspiracy, and Fraudulent Claim

Against Real Property."  These pleaded claims, according to Plaintiffs, "are not related to any

exclusion."  Plaintiffs' Memorandum Brief, p. 26.  This conclusory assertion lacks any

reasonable basis.  Examination of the various versions of the Hawkins Petition shows plainly that

the referenced causes of action are premised on the Bank's actions in placing liens upon the

Hawkins property and refusing to release such liens upon Hawkins' repeated demands: nothing

more and nothing else.  [App. 160-163, where Hawkins in pleading the cited causes of action

expressly relies upon and incorporates its foregoing allegations about the wrongful liens.]

 Moreover, Plaintiffs - - through their counsel in the present case, their counsel in the

Hawkins litigation and their insurance claims handling expert in this case - - are on record as

embracing and advocating the position that:  (1) the "gravamen" of the entire Hawkins suit was

that the Bank wrongfully refused to release the liens it had placed upon the Hawkins property;

and (2) that Hawkins alleged no other type of wrongdoing against the Bank.  [See Plaintiffs'

Memorandum Brief, p. 4, ¶ 12; App. 26, 29 (testimony of David Lutz, Esq., who represented the

Bank in the Hawkins litigation), S.App. 002-003 (testimony of Garth Allen, Plaintiffs' insurance

claims expert)]  Thus, as Plaintiffs' prior admissions confirm, there is no claim or allegation

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

made by Hawkins in the underlying litigation which is not based upon, or arises from, the liens

which the Bank placed upon the Hawkins property and refused to release.  Accordingly, Federal

properly relied on the **Lending Services** Exclusion contained in the D&O Section of its policy in

denying coverage and declining to defend the claim tendered by Plaintiffs.[8]

## V.     BECAUSE PLAINTIFFS CANNOT ESTABLISH A REASONABLE BASIS FOR POTENTIAL COVERAGE OF THE HAWKINS CLAIM, FEDERAL AS A MATTER OF LAW JUSTIFIABLY DENIED COVERAGE AND HAD NO DUTY TO DEFEND PLAINTIFFS IN THE TENDERED HAWKINS LITIGATION

Federal has declined coverage for the Hawkins claim tendered by Plaintiffs, and has set

forth reasoned explanations of its position both in pre-litigation coverage correspondence and the

present briefing on the parties' respective Motions for Summary Judgment.  Federal believes in

good faith that its coverage position is legally compelling and correct, based on the relevant

terms of the BPL and D&O Sections of the policy, basic principles of insurance contract

interpretation, and the unequivocal breadth of the **Lending Services** Exclusion under the D&O

Section of the policy.  To rebut Federal's coverage position (which Federal consistently has

---

[8] The **Lending Services** Exclusion by itself fully supports Federal's denial of coverage, but other exclusions also are pertinent.  As Federal discusses in its own Motion for Summary Judgment, Federal also properly invoked D&O Section Exclusion 7.b. (pertaining to claims arising from an underlying "actual or alleged breach of contract") against the Bank.  Additionally, as Federal has demonstrated in its Motion for Summary Judgment, the Bank stipulated to liability when it settled the Hawkins litigation.  This stipulation of liability to Hawkins triggers Exclusion 4.i. under the D&O Section:

> The Company shall not be liable for **Loss** on account of any **Claim**: … based upon, arising from, or in consequence of: … (1) any **Insured** having gained in fact any profit, remuneration or other advantage to which such **Insured** was not legally entitled.  [App. 024]

In stipulating to liability to Hawkins, the Bank necessarily acknowledged that its liens on the leasehold, used to secure loans made to Lujo, constituted a commercial "advantage" to which the Bank was "not legally entitled."

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

maintained since the claim first was tendered in early 2008) and support their accusation that Federal unjustifiably refused to defend, Plaintiffs are obliged to set forth a reasonable legal basis for their position.  The applicable standard is not that "any argument at all will do;" rather, Plaintiffs must make a reasoned showing that establishes potential coverage for the Hawkins claim under the policy as a matter of law.

Plaintiffs have failed to do so.  Federal respectfully submits that - - after properly analyzing the tendered Hawkins claim and evaluating all coverage issues potentially presented by that claim - - its claims professionals made a conscientious, legally correct decision to deny coverage and decline to defend.  Federal respectfully requests that this Court so rule.

## VI.   <u>CONCLUSION</u>

For all the foregoing reasons, as well as the reasons stated in support of Federal's own pending Motion for Summary Judgment, Federal respectfully requests that the Court deny Plaintiffs' Motion for Partial Summary Judgment in all respects, and grant Federal summary judgment with respect to all claims asserted by Plaintiffs.

Respectfully submitted,

SELTZER CAPLAN MCMAHON VITEK

By:  */s/ James Delphey*                        
James P. Delphey Esq.
Andrea N. Myers, Esq.
2100 Symphony Towers
750 B Street
San Diego, CA  92101
Tel:  619-685-3003
Fax: 619-702-3100
delphey@scmv.com
myers@scmv.com

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

HINKLE, HENSLEY, SHANOR & MARTIN, LLP

By: */s/ Gary Larson*_____
       Thomas M. Hnasko, Esq.
       Gary W. Larson, Esq.
       218 Montezuma
       P.O. Box 2068
       Santa Fe, NM  87504
       Tel:  505-982-4554
       Fax:  505-982-8623
       thnasko@hinklelawfirm.com
       glarson@hinklelawfirm.com
Attorneys for Defendant Federal Insurance
Company

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2012, I filed the foregoing **DEFENDANT FEDERAL INSURANCE COMPANY'S RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Christopher P. Bauman, Esq.     cpb@bdllawfirm.com
Mark C. Dow, Esq.           mcd@bdllawfirm.com
Mike O'Brien, Esq.          mike@moblaw.com

                     /s/ James P. Delphey

                     James P. Delphey, Esq.

DEFENDANT FEDERAL INSURANCE COMPANY'S
RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT