**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

WESTERN HERITAGE BANK, f/k/a
MESILLA VALLEY BANK, JERRY W.
BELL, III, and LUCINDA LOVELESS,

      Plaintiffs,

v.                                              CV 11-0630 MV/WPL

FEDERAL INSURANCE COMPANY,

      Defendant.

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO COMPEL**

At its base, this lawsuit is a dispute over the terms of an insurance policy. (*See* Doc. 19 at 1-2.) This disagreement over the meaning and interpretation of language has, somewhat unsurprisingly, carried through to the discovery process. As a result, Western Heritage Bank, Jerry W. Bell, III, and Lucinda Loveless (collectively "Plaintiffs") have filed a motion to compel discovery from and to impose sanctions against Federal Insurance Company ("Federal"). (Doc. 67.) Federal has responded in opposition to the motion (Doc. 73), and Plaintiffs have replied (Doc. 78). Having reviewed the pleadings, the discovery requests and responses, and the relevant law, I grant in part and deny in part Plaintiffs' motion.

**FACTUAL BACKGROUND**

Plaintiffs purchased an insurance policy from Federal called the Federal Insurance Company Forefront Portfolio for Community Banks ("the Policy"). (Doc. 40 at 2; Doc. 41 at 2; Doc. 73 at 5.) On January 24, 2008, a lawsuit was brought against Mesilla Valley Bank, now known as Western Heritage Bank ("the underlying action"). (Doc. 40 at 2; Doc. 41 at 3.) Plaintiffs, including the bank

and the officers of the bank, submitted requests for a defense and coverage from Federal. (Doc. 40 at 2; Doc. 41 at 3.) Federal denied Plaintiffs' requests at least partially based on the Directors and Officers Liability Coverage Section of the Policy ("D&O Liability Section") and two exclusions, 4(j) and 7(b). (Doc. 40 at 3; Doc. 41 at 4.)

Plaintiffs filed this action against Federal seeking a declaratory judgment that it was obligated to provide a defense and indemnify Plaintiffs in the underlying action. (Doc. 1 at 16-17.) Plaintiffs further seek damages in the form of the cost of the judgment in the underlying action, including pre- and post-judgment interest, and the attorneys fees incurred by Plaintiffs in the underlying action. (*Id.* at 17.) Finally, Plaintiffs seek punitive and/or statutory treble damages. (*Id.*) Federal filed a counterclaim seeking a determination that the Policy did not provide any form of coverage for the underlying action. (Doc. 19 at 2.)

Now before me is the question of whether Plaintiffs can receive information related to the insurance product that preceded and was replaced by the Policy. Plaintiffs claim that they began requesting this information when they propounded their first set of discovery requests, which they served on October 27, 2011. (Doc. 67 at 1.) In Interrogatory No. 9, Plaintiffs asked Federal to "'identify' each variation and/or draft of the D&O Liability Section, from its inception, the date the D&O Liability Section was first drafted, to date." (Doc. 73 Ex. B at 8.) Plaintiffs had defined the D&O Liability Section as the section by that name found in the Forefront Portfolio for Community Banks Policy No. 6801-4792. (*Id.* at 3.) Federal asserted several objections in its initial response, including that the interrogatory sought proprietary information, was unlimited as to time, and was unduly burdensome. (Doc. 73 at 5; Doc. 78 Ex. J at 2.) Federal supplemented its response on

February 28, 2012 to state that no further variations or drafts of the relevant section could be found.[1] (Doc. 67 at 3; Doc. 73 at 9; Doc. 78 at 3.)

Plaintiffs submitted additional discovery requests in an effort to obtain drafts and variations of the section and exclusions of the Policy. Specifically, they submitted a notice to take video deposition *duces tecum* on January 4, 2012. (Doc. 73 Ex. D.) In that notice, they requested, "[c]onsistent with prior requests[,] . . . all drafting history documents, editions and revisions for the Directors and Officers Liability Coverage Section and Broad Form Entity Coverage Endorsement #2 for the ForFront [sic] Portfolio for Community Bank that contain Exclusions 4(j) and 7(b) . . . ." (*Id.* at 2.) Plaintiffs also requested that Defendants designate and produce a witness competent to testify on the drafting history of and employee training on the policy, and the request regarding training stated specifically that it was "not limited to training of just the November 2003 edition but all editions." (*Id.* at 4.) Federal responded on February 6, 2012 with numerous internal training and explanatory materials. (Doc. 73 Ex. E.) It designated Christine Wartella to provide deposition testimony regarding the drafting history, editions, and revisions of the Policy. (Doc. 73 at 9-10.)

When Ms. Wartella arrived for her deposition on March 14, 2012, she provided a six-page document that compared the Policy to the insurance product that it replaced. (Doc. 67 Ex. C at 41:13-45:23; Doc. 67 Ex. D; Doc. 73 at 11-12; Doc. 73 Ex. G at 50:7-51:9.) After this document was provided, the following exchange occurred on the record:

> Q: And in your search of the records, you were unable to come up with the prior policy form?
>
> A: On the prior policy for the predecessor --

---

[1] This supplemental response is not attached to any of the pleadings.

Q: Sure.

A: -- to the ForeFront Portfolio for Community Banks, the ForeFront for Banks product?

Q: Sure.

A: It's an entirely different product.

Q: And you don't -- you can't find a copy of that?

A: Oh, no, we -- I could find a copy of that.

Mr. Bauman[2]: We've only been asking for a copy of all policy variations for about six months.

A: But it's not a variation on the product, I -- I want to be clear, it's not a variation on this product, it was a predecessor product. This was a new product. New form number, new product. It's not like -- it's not like, you know, an edition change it's a -- it's a whole new product.

Mr. Bauman: We're going to have a problem.

Mr. Delphey[3]: What's your problem?

Mr. Bauman: My problem is we've been asking for this information for six months and we've been told that they can't find any prior policies.

Mr. Delphey: Well, I think -- I think -- I don't want to get too much argument on the record, I think you were asking for prior versions of this policy, and she's testified that this is a brand new policy, that's a whole new product. . . . We didn't understand you were asking for entirely different policies, of different products.

(Doc. 67 Ex. C at 30:8-31:16, 31:23-25.)

At this point, it was clear that the parties had been referring to different things in the discovery requests and discovery responses. However, it does not appear that, at that point, Plaintiffs' counsel requested the sections from the predecessor policies. The parties have continued

---

[2] Counsel for Plaintiffs.

[3] Counsel for Federal.

to discuss the dispute, and the linguistic confusion over how to appropriately reference the superceded policy sections persists unabated. (*See* Doc. 78 Ex. H (emails exchanged between counsel demonstrating the ongoing issues in discussing the prior policies).)

Plaintiffs filed this motion seeking to compel Federal to produce the portions of all predecessor policies related to the D&O Liability Section and the relevant exclusions. (Doc. 67 at 5.) Plaintiffs further seek sanctions in the form of requiring Federal to bear the costs of the Wartella deposition and to produce a competent witness to testify regarding the prior policies in Albuquerque for a deposition at Federal's expense. (*Id.*) Federal has made several arguments for why the motion should be denied, including that Plaintiffs failed to satisfy the procedural requirements, never requested the information that is now sought, and seek irrelevant information. (Doc. 73.)

## DISCUSSION

### I.   Meet and Confer Requirement

Federal asserts that Plaintiffs' motion should be denied because they did not confer with Federal in a good faith attempt to resolve the dispute prior to filing the instant motion. (Doc. 73 at 17.) Before a motion to compel is filed, the movant is required to confer or to attempt to confer in good faith with the opposing party in an effort to resolve the dispute without court action. FED. R. CIV. P. 37(a)(1); *see also LaFleur v. Teen Help*, 342 F.3d 1145, 1152 (10th Cir. 2003). The motion itself must include a certification to that effect. FED. R. CIV. P. 37(a)(1). Conferring in good faith requires counsel to "converse, confer, compare views, consult and deliberate" in order to determine "precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention." *Manning v. General Motors*,

5

247 F.R.D. 646, 650 (D. Kan. 2007) (quoting D. Kan. Rule 37.2; *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999)). However, if there is an indication that the dispute would not have been resolved by further efforts at conferring, the court may entertain a motion to compel that does not include a certification. *Oleson v. Kmart Corp.*, 175 F.R.D. 570, 571 (D. Kan. 1997).

Compliance with the meet and confer requirement is ensured in this district by the local rule requiring that a movant determine the opposing party's opposition or concurrence prior to filing. D.N.M.LR-Civ. 7.1(a). In this case, Plaintiffs failed to request Federal's concurrence before filing the motion.[4] Instead, Plaintiffs filed the motion, then emailed Federal's counsel the next day. (Doc. 73 Ex. H.) The email noted that Federal's opposition was not formally determined and stated that a notice of errata would be filed showing Federal's opposition unless informed otherwise. (*Id.*) Approximately ninety minutes later, Plaintiffs filed a notice of errata indicating that Federal opposed the motion. (Doc. 68.)

Plaintiffs' motion does not certify that they conferred with Federal in good faith prior to filing the motion to compel. (*See* Doc. 67.) Instead, Plaintiffs describe multiple requests for the information beginning in late October of 2011. (*Id.* at 1-3.) Federal asserts that it did not, until the Wartella deposition on March 14, 2012, realize that Plaintiffs sought sections of the preceding policies. (Doc. 73 at 14.) It further contends that Plaintiffs never actually asked for the policy sections after it understood what Plaintiffs sought. (*Id.* at 14-15.) Accordingly, Federal argues that Plaintiffs' motion should be denied because they failed to satisfy the prerequisites for filing a motion

---

[4] This is not the only local rule with which Plaintiffs failed to comply. They also failed to attach a copy of the discovery requests and responses at issue to their motion. *See* D.N.M.LR-Civ. 37.1. This was remedied for the most part in their reply. (*See* Doc. 78 Exs. J & K.)

to compel. (*Id.* at 17.)

Given the 20/20 vision of hindsight, it is clear that Federal never understood Plaintiffs' discovery requests to include drafts of outdated and replaced policies. Because Federal firmly believes that the Policy was a new product, the request for all drafts and forms of the D&O Liability Section of the Policy was interpreted to relate only to the new product and not predecessor products. (*See* Doc. 67 Ex. C at 30:23-31:25; Doc. 73 at 12-13.) Had Plaintiffs contacted Federal and explained that they did not understand why they were not provided with any prior versions of the Policy, Federal could have advised Plaintiffs that it considers the Policy to be a new product. Alternatively, had Plaintiffs discussed the "problem" with Federal in the nearly two weeks between the Wartella deposition and the filing of this motion, it is possible that Federal would have provided the documents requested. Either alternative would have served the purpose of the meet and confer requirement. Plaintiffs did not do so and, thus, did not comply with the Rule 37 prerequisites.

Nonetheless, I will entertain this motion. Though the purposes of the meet and confer requirement were never satisfied, Plaintiffs unsuccessfully attempted to obtain the information on multiple occasions. Plaintiffs apparently did not realize that Federal misunderstood their requests. More significantly, Federal has indicated that, even had it understood Plaintiffs' requests to encompass prior policies, it would not have provided the information because it is irrelevant. (*See* Doc. 73 at 18.)

*II.   Plaintiff's Discovery Requests*

Federal next argues that Plaintiffs never requested the information that they seek through this motion to compel, rendering the motion to compel improper. (Doc. 73 at 16.) Plaintiffs adamantly insist that they requested the predecessor policies by including the words "variation" and "draft" in

Interrogatory No. 9. (Doc. 78 at 2.) Furthermore, they contend that Federal's interpretation of Interrogatory No. 9 would render it meaningless. (*Id.*)

As discussed above, it is now clear that Plaintiffs intended the disputed discovery requests to include the drafts and variations of the D&O Liability Section of the predecessor policies. Plaintiffs could not have known that the Policy was a new product with no prior editions or variations when drafting the interrogatory. Had it not been a new product, Plaintiffs' discovery requests would have yielded the production of the documents currently sought. Accordingly, I find that Plaintiffs attempted to request the prior policies through Interrogatory No. 9. Because Federal did not identify the prior policies and the drafting history of those policies, Federal's response was incomplete. Thus, Plaintiffs' motion to compel may proceed. *See* FED. R. CIV. P. 37(a) (stating that a motion to compel may be made if "a party failed to answer an interrogatory . . ." and clarifying that an "incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

At the same time, though, I find that Federal's interpretation of the interrogatory was not unreasonable. Plaintiffs had specified in the definitions to their discovery requests that the D&O Liability Section referred to the section that was included in the Policy. Federal's response to Plaintiffs' Interrogatory No. 9 and subsequent discovery requests comported with the language used and definitions provided by Plaintiffs.

III.     *Relevance Objection*

Because this Court finds that Plaintiffs' motion to compel is appropriate, Federal asserts that the information sought by Plaintiffs is irrelevant. (Doc. 73 at 18.) In support of this argument, Federal states that "[t]he merits of the parties' respective positions stand or fall based on reasonable

interpretation of the actual insurance contract they entered into . . . ." (*Id.*) Plaintiffs counter that the exclusion that Federal relied on to deny coverage is ambiguous, and courts in New Mexico are permitted to consider extrinsic evidence when interpreting ambiguous contracts. (Doc. 78 at 4-5.)

Discovery is permitted into "any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Rule 26 goes on to define relevant information as that which is "reasonably calculated to lead to the discovery of admissible evidence." *Id.* When a party moves to compel discovery, it must establish that the facts are relevant on their face. *See Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 664 (D. Kan. 2003). Once that low threshold is satisfied, the burden shifts to the party opposing discovery to support its objection. *See id.*

As Plaintiffs have identified, when courts in New Mexico analyze the terms included in an arguably ambiguous contract, they are not limited to the four corners of the agreement. *Ponder v. State Farm Mut. Auto. Ins. Co.*, 12 P.3d 960, 965 (N.M. 2000) (citations omitted). Instead, they are permitted to examine extrinsic evidence both to determine whether an ambiguity exists and to resolve any ambiguities that might exist. *Id.* Here, Plaintiffs have asserted that portions of the Policy were ambiguous. (Doc. 71 at 11.) Accordingly, Plaintiffs' request for the superceded policy sections is at least minimally relevant as defined by Rule 26, and Federal has not met its burden to demonstrate the merit of its objection.

I overrule Federal's objection and order it to (1) fully respond to Plaintiffs' Interrogatory No. 9, as it has been construed in this order, and (2) produce the products that preceded the Policy and include a D&O Liability Section and the relevant exclusions from 1993 to 2003, including the

9

drafting histories.[5] These responses shall be provided to Plaintiffs by **May 18, 2012.** Plaintiffs may also request to depose a witness regarding the supplemental discovery. If Plaintiffs choose to conduct the deposition, they must notice the deposition within one week of the receipt of Federal's supplemental responses, and it must be completed no later than **June 18, 2012**.

IV.     *Additional Sanctions*

Plaintiffs request that, in addition to ordering that Federal produce the superceded policies and their drafting histories, I order Federal to bear the costs expended on the Wartella deposition that occurred in New Jersey and the future costs of deposing an individual with knowledge of the previous policies and drafting histories. (Doc. 78 at 6.) The sole authority cited for this request is an unpublished Tenth Circuit case in which the sanctioned party failed to respond to written discovery requests even after multiple court orders. *Beilue v. Int'l Bhd. of Teamsters, Local No. 492*, 13 F. App'x 810, 811-13 (10th Cir. 2001). The Court only addressed the authority to impose sanctions under Rule 37(b), which applies when a party fails to comply with a court order. *Id.* at 813.

Plaintiffs' motion here is brought pursuant to Rule 37(a), not Rule 37(b). Rule 37(a) only authorizes the court to order payment of "the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5). The rule does not authorize the imposition of the sanctions requested by Plaintiffs. Moreover, because Plaintiffs failed to properly meet and confer regarding this dispute and because Federal's responses were justified, I will not search for authority to impose these costs.

---

[5] Plaintiffs' reply requests additional supplementation that was not addressed in their motion. I will only order the relief requested in the motion to compel. The time limitation that I have imposed is based on Federal's initial objection to Interrogatory No. 9. I find that a time limitation is warranted so that Federal is not unduly burdened by this order. Accordingly, I have limited the time period to ten years prior to the introduction of the Policy.

## CONCLUSION

Plaintiff's motion to compel is granted in part and denied in part. Federal must provide supplemental responses as directed above.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.