IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WESTERN HERITAGE BANK f/k/a
MESILLA VALLEY BANK, JERRY W.
BELL, III, and LUCINDA LOVELESS,

        Plaintiffs,

vs.                                                                  Case No. 2:11-CV-00630 MV/WPL

FEDERAL INSURANCE COMPANY,

        Defendant.

**DEFENDANT FEDERAL INSURANCE COMPANY'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Plaintiffs have not brought forth any material evidentiary facts, nor made any legal argument, sufficient to overcome either of the two independent grounds that support Federal's Motion for Summary Judgment.  First, Plaintiffs have provided no sound or reasonable rebuttal of Federal's coverage position, which is well-supported by the policy terms, applicable law and the undisputed facts.  Second, Plaintiffs have not shown that the settlement and judgment in the underlying Hawkins litigation (which they helped orchestrate) is any less collusive and contrary to public policy than the strikingly similar settlement proceedings condemned by both the Tenth Circuit Court of Appeals and former Chief United States District Judge Conway in the Westerfield case.  Accordingly, Federal is entitled to summary judgment on each of the two independent grounds supporting its Motion.

## II.     ARGUMENT

**A.     Plaintiffs Have Not Rebutted Federal's Coverage Analysis And Have Not Set Forth Any Reasonable Interpretation Of The Policy Giving Rise To A Duty To Defend**

### 1.     Reply to Plaintiffs' Factual Presentation about Coverage Issues

At pp. 5-9 of its Motion for Summary Judgment, Federal set forth 15 basic evidentiary facts which are relevant to the insurance coverage/policy interpretation issues as to which Federal requests a legal determination by this Court. At pp. 2-3 of their Response Memorandum, Plaintiffs for the most part accept and do not dispute these facts set forth by Federal. Apart from objecting to a few of Federal's listed evidentiary facts as being irrelevant to Plaintiffs' view of the case, or implying a legal conclusion with which Plaintiffs disagree, the only major point of contention relates to Federals evidentiary fact No. 9, where Federal describes the gravamen of the Hawkins litigation as follows: "the Bank wrongfully had encumbered the leasehold and wrongfully refused to release the liens upon demand." Plaintiffs quibble that "the basis for the Hawkins suit was the Bank's alleged intentional refusal to release the Liens after Hawkins requested that the Bank release them." But there is no real disagreement here at all; Federal agrees that Hawkins' basic complaint was that the Bank refused to release the liens (and/or dispose of collateral seized thereunder) in response to Hawkins' repeated demands and litigation.[1] [App. 226, p. 29] Thus, there is in reality no material factual dispute whatsoever concerning the evidence pertinent to the insurance coverage/policy interpretation issues which both sides have asked this Court to determine as a matter of law.

---

[1] It is also true that Hawkins alleged that the liens wrongfully had been placed upon the property. See, e.g., App. 148.

2

### 2. Reply to Plaintiffs' Arguments about Federal's Coverage Position

Plaintiffs assert that "the Bankers' Liability Policy should not be used to interpret the meaning of the Director & Officer Liability Policy." See Response, p. 15. This assertion is disingenuous since it is a basic rule of contract interpretation that an insurance contract needs to be interpreted consistently as a whole, and Plaintiffs do not dispute they purchased a single "package" insurance policy from Federal. See Federal's fact No. 1 and Plaintiffs' response thereto. Moreover, it is a matter of record that the Bank paid separate premiums for the D&O and BPL Sections of the "package" policy. [App. 010] If Plaintiffs were correct that the D&O Section (notwithstanding Exclusion 4.j.) should be construed as providing coverage for professional liability and lending-related claims, the BPL Section would be entirely redundant and superfluous.

Not only is this not a rational reading of the policy as a whole, but the claims history shows that the BPL and D&O Sections each provide meaningful, but separate coverage. Indeed, during 2007 (the year before the Hawkins claim arose) the Bank tendered two other insurance claims under the policy to Federal. The first of these claims involved a regulatory investigation and subpoena by the State of New Mexico, Securities Division. Federal expressly accepted coverage for this regulatory matter under the D&O Section while explaining that terms of the BPL Section precluded coverage. [App. 414-416] The second 2007 claim involved litigation by Bank customers who claimed they had been overcharged interest on a loan. Federal (under the same BPL coverage analysis as in the Hawkins tender) agreed to defend under the BPL Section, because the tendered action was brought by customers and arose out of **Lending Services** provided by the Bank. [App. 407-411] Significantly, Federal then expressly advised the Bank

(as it later did in the Hawkins tender) that the D&O Section did <u>not</u> provide potential coverage, given the broad exclusion for **Lending Services** and **Professional Services** contained in Section 4.j.[2]  [App. 402]  Plaintiffs in 2007 did not quarrel with this coverage analysis.

Plaintiffs, however, now contend that the **Lending Services** Exclusion (Section 4.j.) of the D&O Section, notwithstanding its broad form language, i.e., "based upon, arising from or in consequence of . . . **Lending Services**," should be interpreted narrowly as requiring the insurer to prove that the Bank's **Lending Services** were the "proximate" or "immediate" cause triggering the Hawkins claim.  In asserting this legally erroneous position, Plaintiffs entirely ignore the extensive and well-reasoned body of case law (summarized by Federal at pp. 13-15 of its Response to Plaintiffs' Motion for Partial Summary Judgment) holding that broad form exclusions such Exclusion 4.j. must be interpreted under a broader, but-for causation analysis.[3]

---

[2] This prior claims history under the policy proves:  (1) Federal has provided a uniform and consistent interpretation of its "package" policy to the Bank; (2) Federal found coverage for tendered litigation matters under both the D&O and BPL Sections under appropriate circumstances; and (3) Federal's analysis of the Hawkins claim is entirely consistent with the analysis Federal previously provided (to Plaintiff Bell) with respect to the two prior claims.  Plaintiffs are remarkably silent about the claims-handling history under the policy, and the consistent manner in which Federal previously interpreted the same BPL and D&O provisions relevant to analysis of the Hawkins claim.

[3] Remarkably, shifting away from their misguided "proximate cause" argument, Plaintiffs also assert that an "independent, intervening cause" - - occurring after the Bank's loans and liens - - broke the but-for causal chain and should preclude Federal's reliance on the **Lending Services** exclusion.  In making this "independent, supervening cause" assertion, Plaintiffs rely upon <u>Britt v. Phoenix Indem. Ins. Co.</u>, 120 N.M. 813, 907 P.2d 994 (1995), involving a situation where an automobile collision caused no injuries, but angry passengers from one vehicle thereafter violently attacked a passenger from the other, causing him substantial physical harm.  Under the unique circumstances present in <u>Britt</u> - - an automobile collision followed by a separate intentional tort - - the court ruled that "there was but-for causation between the collision and Britt's injuries" but it was unclear whether "the attack was an act of independent significance sufficient to breach this causal chain."  <u>Id</u>. at 999, 1000.   The court remanded the case for

4

For all these reasons, and points previously briefed, Plaintiffs have set forth no plausible interpretation of the policy which would require Federal to defend the Hawkins litigation under the D&O Liability Section of the policy, which broadly excludes any coverage for **Lending Services**-related claims. Federal respectfully requests a legal ruling that its coverage determination is and was correct.

**B.    Plaintiffs Have Not Refuted Federal's Showing That The Settlement, Trial And Judgment In The Hawkins Litigation Was Collusive As A Matter Of Law**

  **1.    Reply to Plaintiffs' Factual Presentation Regarding the Hawkins Settlement and Judgment**

Federal at pp. 9-10 of its Motion sets forth five basic evidentiary facts (16-20) concerning settlement, trial and judgment in the Hawkins case. In addition to commenting upon, and purporting to "dispute" certain of these facts, Plaintiffs also have listed some 39 "additional facts" (A through MM) relating to the same subject matter which Plaintiffs claim are material and undisputed. Federal replies as follows to these factual contentions of Plaintiffs:

   18.   Plaintiffs' response is misleading in several respects. The Hawkins Settlement Agreement expressly apportioned (or "assigned") the Bank a 40% share of any recovery up to $1.41 million (50% thereafter) with express reference to the anticipated Hawkins damages judgment to be rendered by "the El Paso Court." [App. 258] The Bank thus knew and understood, before the damages assessment trial in El Paso, that under its settlement it would be

---

determination whether the collision itself was part of the pre-meditated attack or the collision was accidental and the attack a spontaneous event caused by hot tempers following the collision. Britt does not support Plaintiffs' position. There is no similar ambiguity about the chain of events in Hawkins. After the Bank imposed its liens, there was no change in the status quo. The Bank stubbornly refused to release its liens notwithstanding Hawkins' demands and litigation. The Bank's deliberate refusal to release the liens is a continuance of the same lending-related commercial conduct by the same actor. The Bank's ongoing, wrongful conduct is hardly a "new," "independent and intervening" or "distant" cause of harm to Hawkins.

entitled to at least a 40% stake in Hawkins' judgment. While Hawkins now asserts that "the Bank assigned a portion of its bad faith claims to Hawkins" it is clear from ¶ 4 of the Settlement Agreement (as well as Plaintiffs' prayers for relief in this case) that the judgment in favor of Hawkins was the agreed, primary source of alleged bad faith "damages" to be collected and apportioned between the parties. Federal agrees that the Bank and Hawkins stipulated to conduct an evidentiary hearing on Hawkins' damages claim, and that before that hearing Hawkins waived its claim for exemplary damages and the Bank stipulated to liability. While the settlement documentation does speak about the Court "determining the reasonableness" of Hawkins' claimed damages, the true object of the settlement (as proven by the parties' conduct) was not "a determination of reasonableness," but rather a money judgment in a particular amount that the Bank intended to enforce on behalf of itself and Hawkins in the present action. Finally, Federal respectfully submits that the proceedings held before Judge Susan Larsen of the El Paso District Court on July 15, 2011, described by her as "a hearing on the merits, a hearing on damages" [App. 286] - - which involved sworn witness testimony and arguments of counsel, culminating in a money judgment - - did involve a "bench trial" (albeit not a truly "adversarial" trial).[4]

    19. See response to 18 above. Additionally, review of the July 15, 2011 transcript shows that the Bank's counsel did not strive to reduce the damages amounts sought and argued for by Hawkins, even though the Bank and its counsel believed such damages to be excessive, and had retained a damages expert prepared to rebut such claimed damages. [App. 229, 251] Any "cross-examination" engaged in by counsel for the Bank was limited, controlled and deferential,

---

[4] Cf. the old proverb "if it looks like a duck, and quacks like a duck, then it's a duck."

and ultimately the Bank's counsel did not counter or challenge Hawkins' total claimed damages "figure." [App. 371]

22. Federal has cited testimony from Plaintiffs Loveless and Bell saying they are not paying counsel fees and hold contingent recovery stakes in this case.

As to Plaintiffs' "additional Facts," Federal agrees with certain of them but disputes and/or objects to the others as follows:

**D-E**. Incomplete. In settlement discussions, Hawkins waived its punitive damages claim and also informed the Bank it would have accepted a single lump sum payment of $450,000 in full settlement of its claims. See Plaintiffs' additional Facts **A**, **S** and **FF**.

**F-L, N-O**. Federal acknowledges it was put on notice of settlement discussions and the impending trial. Contrary to Plaintiffs' insinuation, Federal appropriately declined to participate, based on its considered, good faith analysis that the policy did not provide potential coverage for the Hawkins lawsuit.

**M**. Plaintiffs for the first time have placed in evidence a privileged communication between attorney Lutz and the Bank. While the content of this particular communication is not surprising, Federal was not provided discovery of this or other attorney-client communications, and therefore objects to the Court considering such evidence. [See App. 242, p. 132 (assertion of privilege)]

**S**. Incomplete. The Settlement Agreement expressly references the judgment to be obtained by Hawkins in El Paso District Court as the primary funding vehicle for the parties' shared settlement. See Response to 18-19 above.

**T**. Misleading and incomplete. The July 12, 2011 letter did <u>not</u> inform Federal that the Bank

7

intended to: (1) take a 40% share in the damages judgment to be awarded to Hawkins; (2) participate with Hawkins in a damages assessment trial but not urge the Court to discount the amount of damages claimed by Hawkins; and (3) pursue collection of that judgment (on behalf of both itself and Hawkins) in the present litigation.  Rather, the July 12, 2011 letter informed Federal (misleadingly) that the Bank intended to settle the case with a $200,000 payment, coupled with a partial assignment (in some unspecified percentage or amount) of any recovery to be achieved by Plaintiffs in the present case.  (Had the settlement occurred that way, there would have been no Westerfield violation.)  Finally, whereas Federal was advised in the July 12, 2011 letter that the Court would "determine the reasonableness" of Hawkins' claimed damages, that is an entirely different thing from the Court actually entering a specific damages judgment in favor of Hawkins, as to which the Bank already had agreed to accept a 40% stake.

**U**.  The quoted deposition testimony recites inadmissible hearsay.  In all events, the record of the July 5, 2011 damage assessment trial shows that the Bank did not argue for a different damages figure than that requested by Hawkins at the conclusion of the evidence.  [App. 371]

**V, HH**.  Incomplete and misleading.  The disclosures made to the Texas Trial Court conveyed the message that the insurer exhibited a pattern of non-cooperation and irresponsible disregard of its insured.  No disclosure was made that there had been extensive correspondence relating to coverage, and a *bona fide* coverage dispute existed.  The Bank and Hawkins deliberately painted a misleading picture of blatant bad faith on the part of Federal, which clearly did not exist.

**W**.  Misleading.  Mr. Lutz repeatedly testified that there was "a different atmosphere" before the Texas Court than in a normal, contested trial proceeding.  The true gist of Mr. Lutz' testimony was his acknowledgement that the Hawkins damages assessment hearing was not a truly

8

adversarial trial, but rather a proceeding designed to achieve a fore-ordained conclusion per the terms of the parties' pre-existing settlement agreement.  [App. 172, 238, 252]

**Z, AA, BB, CC**.  Incomplete and misleading.  The limited "cross-examination" politely engaged in by the Bank's counsel did not achieve any reduction in the amount of damages (or questionable attorney fees) claimed by Hawkins, and, indeed, the Bank's counsel did not challenge or counter Hawkins' proposed damages figure at the conclusion of the evidence.  [App. 371]

**EE**.  The parties jointly requested the damages be offset by settlement amounts previously paid by other defendants, as required by Texas law.  [App. 364, 370]  As Plaintiffs note at their fact **GG**, it was Hawkins' trial counsel that informed the Court that an additional attorney fee offset was required.  [App. 374-378]

**FF, KK, LL**.  Incomplete and misleading.  The record is clear that the Bank, through its pre-agreed settlement with Hawkins, knew upon entering the damages assessment trial that Hawkins had waived punitive damages and that its total exposure to Hawkins was the $200,000 agreed settlement payment amount, as Hawkins had agreed not to execute against the Bank for any greater amount.  [App. 269]

**II, JJ**.  Misleading and implying the Court discounted Hawkins' claimed damages.  Hawkins agreed that $1,234,245 was the appropriate damages amount, in light of previous settlement payments made by other defendants which Texas law required be offset.  [App. 370, 374-378]  Thus, Hawkins obtained a judgment in the full amount of the damages it argued for at the damages assessment trial, and, as set forth above, the Bank contractually acquired a 40% interest in this judgment amount.

9

**MM**. The statements about alleged attorneys' fees, costs and settlement payments are unsubstantiated hearsay, as Plaintiffs have provided no proof of these amounts. Significantly, Plaintiffs are vague about whether the referenced fees and costs are those incurred in the Hawkins litigation, this action against Federal, or both.

### 2. Reply to Plaintiffs' Arguments about the Hawkins Settlement and Judgment

Unsurprisingly, Plaintiffs defensively attempt to distinguish what happened in Hawkins from the Westerfield case. As a matter of law, those efforts don't deliver. Just as in Westerfield, the parties to the Hawkins litigation contrived a collusive settlement strategy involving (1) setting up the entry of an unreasonably large money judgment to be enforced against a non-defending insurer, and (2) an express agreement that the former adversaries ultimately would reap and share the judgment spoils on an agreed percentage basis.[5]

Plaintiffs incorrectly argue both: (a) that Federal is estopped to challenge the Hawkins settlement because Federal declined to defend; and (b) that Plaintiffs' "full disclosure" of the proposed settlement also precludes Federal from challenging it. As shown above in Federal's analysis of Plaintiffs' proffered additional fact **T,** Plaintiffs made materially misleading rather than full disclosure about the intentions and terms of the impending settlement and judgment.[6]

---

[5] No claim is or can be made that it was impossible to settle the case in a way that avoided such collusion. The gap between Hawkins' final demand ($450,000) and the Bank's final offer ($200,000) could have been bridged, for example, by the Bank simply assigning Hawkins all or some of the potential recovery in this insurance litigation (as Plaintiffs told Federal was being done [App. 210]), or by small, structured installment payments to Hawkins (in lieu of lost rent).

[6] Also, one searches the July 15, 2011 hearing transcript in vain for any disclosure to the Court that the Bank had accepted a 40% interest in the Hawkins judgment. Under Westerfield, such concealment is "further evidence of collusion." Westerfield, 961 F. Supp. at 1506. The Bank's counsel affirmed that the Court never read the parties' settlement agreement (which alone

10

In any event, "New Mexico Courts consistently have recognized that the insurer retain[s] the right to challenge the reasonableness of [a] settlement, despite having taken no action to protect their interests in the primary action." State Farm & Cas. Co. v. Ruiz, 36 F. Supp. 2d 1308, 1319, (D.N.M. 1999) citing Continental Cas. Co. v. Westerfield, 961 F. Supp. 1502, 1504-05 (D.N.M. 1997). See also American Gen. Fire & Cas. Co. v. Progressive Cas. Co., 110 N.M. 741, 746, 799 P. 2d 1113, 1117-18 (1990).[7]

More substantively, Plaintiffs doth protest at length (and perhaps "too much") that the Hawkins settlement and judgment were not intended to be illegal, fraudulent or collusive under the law this Court must apply. Response, pp. 16-21. Federal believes that this Court - - by independently analyzing the submitted evidence against the Westerfield legal principles - - is well-situated to evaluate and decide whether the settlement and judgment proceedings that played out in the Hawkins case were entirely lawful, fair and proper (as Plaintiffs protest) - - or are legally akin to the proceedings pronounced collusive and against public policy in the U.S. District Court and Tenth Circuit Westerfield opinions. The Bank and Hawkins (perhaps with a winked eye to the Westerfield principles) repeatedly have asserted the mantra or "cover story" that all they did was ask the Texas court to determine the "reasonableness" of Hawkins' claimed damages. But the reality is that they (like the litigants in Westerfield) acted in concert to obtain a

---

disclosed the Bank's 40% stake) before entering judgment. [App. 252]

[7] Plaintiffs have not even attempted to rebut Federal's position that the Hawkins settlement would be void under applicable Texas law. Instead, Plaintiffs lamely argue that New Mexico law would have governed the Hawkins settlement even absent the parties' deliberate insertion of a New Mexico choice of law clause in their settlement agreement. This contention is legally meritless. Not only are Hawkins' claims expressly pleaded under Texas law, but Texas' own choice of law rules require that Texas law apply to litigation involving real property located in Texas. See Cook v. Frazier, 765 S.W. 2d 546, 550 (Tex. App. 1989).

11

FEDERAL INSURANCE COMPANY'S REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

highly-inflated money judgment (nearly $800,000 more than Hawkins' final $450,000 demand) - - as to which the Bank not only accepted a 40% stake, but undertook the responsibility to enforce against Federal in this action.  In sum, when the record evidence is analyzed surgically and objectively, Federal respectfully submits it is not a close legal question: the Bank engaged in collusive conduct violating the <u>Westerfield</u> principles and therefore Federal can have no liability to Plaintiffs under the insurance contract.

### III.    CONCLUSION

For all the foregoing reasons, Federal Insurance Company respectfully requests that the Court issue an order granting it Summary Judgment with respect to each and every one of the claims and causes of action asserted by Plaintiffs, and awarding Federal the relief requested in its First Amended Counterclaim for Declaratory Relief.

Respectfully submitted,

| SELTZER CAPLAN MCMAHON VITEK<br>A Law Corporation<br><br>By: */s/ James Delphey*_____<br>James P. Delphey Esq.<br>Andrea N. Myers, Esq.<br>2100 Symphony Towers<br>750 B Street<br>San Diego, CA  92101<br>Tel:  619-685-3003<br>Fax:  619-702-3100<br>delphey@scmv.com<br>myers@scmv.com | HINKLE, HENSLEY, SHANOR &<br>MARTIN, LLP<br><br>By: */s/ Gary Larson*_____<br>Thomas M. Hnasko, Esq.<br>Gary W. Larson, Esq.<br>218 Montezuma<br>P.O. Box 2068<br>Santa Fe, NM  87504<br>Tel:  505-982-4554<br>Fax:  505-982-8623<br>thnasko@hinklelawfirm.com<br>glarson@hinklelawfirm.com |

Attorneys for Defendant Federal Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2012, I filed the foregoing **DEFENDANT FEDERAL INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Christopher P. Bauman, Esq. | cpb@bdllawfirm.com |
| Mark C. Dow, Esq. | mcd@bdllawfirm.com |
| Mike O'Brien, Esq. | mike@moblaw.com |

/s/ James P. Delphey
James P. Delphey, Esq.
