## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**WESTERN HERITAGE BANK, f/k/a**
**MESILLA VALLEY BANK, JERRY W.**
**BELL, III, and LUCINDA LOVELESS,**

      **Plaintiffs,**

**v.**                                            **CV 11-0630 MV/WPL**

**FEDERAL INSURANCE COMPANY,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant and Cross-Claimant Federal Insurance Company's ("Federal") *Motion for Summary Judgment*, filed April 2, 2012 (Doc. 70)[1]. At the heart of the Plaintiffs' cause of action is the issue whether a commercial insurance policy that Federal issued to Plaintiff Western Heritage Bank's ("Bank")[2], obligated Federal to provide a defense to the Plaintiffs in a state-court action brought in Texas against the Plaintiffs by a third party, Hawkins Boulevard, LLC ("Hawkins"). Because the relevant material facts are undisputed, this legal issue is ripe for resolution. And because it is clear, under these undisputed facts, that no duty to defend arose because coverage for Hawkins' claims against the Plaintiffs is specifically excluded in the applicable Policy, the Court will grant summary judgment in favor of Federal.

## I.  UNDISPUTED FACTS[3].

---

[1]  Briefing on this motion was completed on May 7, 2012.  *See* Doc. 89.

[2]  The word "Bank" in this Opinion includes the Mesilla Valley Bank, Western Heritage Bank's predecessor-in-interest.

[3]  Plaintiffs do not dispute any of Federals' facts regarding the allegations in Hawkins' Complaints set forth in its motion for summary judgment, *see* Doc. 82 at 2-3, ¶¶ 1-17, but I have also reviewed the Hawkins' Complaints so that I have a complete recitation of its allegations against the Plaintiffs.

The Bank purchased Federal's Forefront Portfolio for Community Banks ("the Policy"). The Policy consists of several sections, for which the Bank paid separate premiums. *See* Doc. 70-3 at 11. Two of these sections are the Bankers Professional Liability ("BPL") Section, which included a Lender's Liability Coverage Endorsement, and which provides coverage for claims made by the Bank's customers associated with the Bank's Professional and/or Lending Services; and the Directors and Officers Liability ("D&O") Policy. The Plaintiffs state that they "do not [claim], and have never claimed[,] coverage under the Bankers' Liability Policy." Doc. 82 at 2.

In January 2008, Hawkins brought a *Declaratory Action to Determine Lien Validity and Slander of Title* against the Bank in a Texas state court. The facts regarding this underlying action are as follows: The Bank loaned money to its customer, LUJO (a group of Mexican nationals), to purchase an "El Pollo Loco" franchise and build a restaurant. When the original plan to build fell through, the Bank permitted LUJO to use the loan to instead lease an existing restaurant on property owned by Hawkins and to make renovations to that restaurant. *See* Doc. 70-5 at 30-32 (Hawkins' fourth amended complaint). Hawkins' and LUJO's lease expressly provided that LUJO could not assign or transfer any interest in the restaurant/property to a third party and that Hawkins had a priority security interest in all fixtures and chattels in the restaurant. *See id.* at 29-32 & n.2. Hawkins was not a customer of the Bank. Without Hawkins' knowledge, and in violation of the lease agreement, the Bank later secured the LUJO loan by recording what Hawkins describes as a "fraudulent" Deed of Trust and UCC-1 Financing Statements (the "Liens") (which included the equipment, the franchise and the restaurant lease) against the Hawkins property, which encumbered not only the leasehold, but "the building and other improvements," including the fixtures. *See id.* at 32-33. The Bank also secured subsequent LUJO loans for a different restaurant by filing a second Deed of Trust alleging a security interest in the Hawkins property. *See id.* at 33-34. Hawkins

2

refused to ratify or sign the Deeds of Trust. *See id.* at 35. Nevertheless, the Bank later loaned yet more money to LUJO and filed a third fraudulent Deed of Trust against the Hawkins property. *See id.* at 36. LUJO subsequently defaulted on its Bank loans, its franchise agreement, and its restaurant lease. Hawkins terminated the lease and LUJO turned the leasehold over to Hawkins. Another company, WKS Restaurant Corporation, took over LUJO's franchise and started operating the Hawkins restaurant. *See id.* at 37. But when Hawkins tried to execute a new lease with WKS in July 2007, the Bank refused to release the Deed of Trust/Lien on Hawkins' property, "demanding that it be paid hundreds of thousands of dollars before it would release the fraudulent liens and assignments." *Id.* at 38. Because Hawkins was unable to clear the cloud on the title to the property so that the new lease with WKS could be executed, WKS eventually shut down its operation of the restaurant and abandoned the property in February 2008. *Id.* The Bank continued to refuse to release the liens, stating that it also "had a priority lien on the equipment" located in the restaurant, "and would not provide releases until the Bank removed the equipment," which it failed to do for many months. *Id.* at 39-40. The Bank ultimately wrote off the LUJO loans as a total loss and foreclosed on certain restaurant equipment. The Bank sold some of the restaurant equipment but continued to refuse to release the liens even after Hawkins repeatedly informed the Bank that it had other potential contracts to lease the restaurant that were being held up because of the liens. *See id.* at 40-41. The Bank finally released the liens in October 2008. *Id.* at 41.

As noted, Hawkins filed a Complaint against the Bank in 2008 and subsequently filed several Amended Petitions that included the Bank's officers (including Loveless and Bell), and the Bank's attorneys, as Defendants. Its claims included a request for declaratory judgement that the liens were fraudulent; state-law claims for conspiracy, slander of title, tortious interference, and tortious interference with expectant contracts and business relations; and a statutory claim for fraudulent

3

claim against real property.  *See id.*  at 42-46.  These claims were all based on Hawkins' allegations that the Bank and its officers and agents improperly placed the fraudulent deeds of trust and liens on the leasehold property to secure the Bank's loans to LUJO and then wrongfully refused to release the liens unless Hawkins paid the Bank hundreds of thousands of dollars.  *See id.*

The Plaintiffs tendered each of Hawkins' complaints to Federal and requested a defense and coverage.  After reviewing the facts alleged in the various complaints and in a June 3, 2011 Demand Letter written by Plaintiffs' counsel,  Federal repeatedly denied Plaintiffs' demands for defense and coverage.

The following provisions of the D&O Section of the Policy are relevant to the Plaintiffs' claims.  The general coverage clause states that Federal "shall pay, on behalf of each of the Insured Persons, Loss for which the Insured Person is not indemnified by the Organization on account of any Claim first made against the Insured Person, individually or otherwise, during the Policy Period . . . for a Wrongful Act . . ."  Doc. 70-3 at 18.  The term "Claim" is defined, in relevant part, as: "a civil proceeding commenced by the service of a complaint or similar pleading." *Id.* at 19.  The term "Insured Person" includes the Bank and its directors, officers, and in-house counsel.  *Id.* at 20. "Loss" is defined as "the amount any Insured Person becomes legally obligated to pay on account of any covered Claim . . . ."  *Id.* at 21.  A "Wrongful Act" means "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed . . . by an Insured Person in his Insured Capacity."  *Id.* at 23.  But the D&O Policy also contains Exclusion 4.j., a broad exclusion providing that Federal  "shall not be liable for Loss on account of any Claim:…based upon, arising from, or in consequence of the performing or failure to perform . . . Lending Services." *Id.* at 23, 25.  "Lending Services" are defined as:

any act performed by an Insured for a Lending Customer of the Organization in the

4

course of extending or refusing to extend credit or granting or refusing to grant a loan or any transaction in the nature of a loan, including any act of restructure, termination, transfer, repossession or foreclosure.

*Id.* at 21.

## II.  Applicable Standards.

On a motion for summary judgment , the Court

view[s] the evidence and its reasonable inferences in the light most favorable to the non-movant.  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" on the issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of fact is material "if under the substantive law it is essential to the proper disposition of the claim."

*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citations omitted).  The ultimate inquiry in a summary-judgment disposition is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## III.  Analysis

Federal contends that it is entitled to summary judgment on Plaintiffs' claims because, although the Lenders Liability Endorsement for the BPL section of the Policy package provides coverage for lending-related activities of the Bank, such as the taking of security interests, that coverage is expressly limited to claims brought by the Bank's customers, and Hawkins was not a customer.  Federal further contends that Exclusion 4.j of the D&O section of the Policy package expressly excludes coverage under that section of the Policy package because Hawkins' claims against the Plaintiffs all were based upon, arose from, or were in consequence of, the Bank's and its Officers and agents "performing or failure to perform . . . Lending Services."  Doc. 70 at 3.  I

5

agree that, because the Policy expressly excludes coverage for Hawkins' claims against the Plaintiffs, Federal had no duty to defend them in the Hawkins action, and I will address the Plaintiffs' arguments raised in response to the motion for summary judgment that challenge that conclusion.

Because this is a diversity action, I will apply New Mexico substantive law. *See Haberman v. Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006) ("In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the ultimate, procedural question whether judgment as a matter of law is appropriate.").

**A.  The Policy excludes coverage on Hawkins' claims.**

The Plaintiffs first correctly contend, *see* Doc. 82 at 11, that they must only establish that Federal had a duty to defend them in the Hawkins case because New Mexico "recognizes the distinction between an insurer's duty to defend under the terms of an insurance policy and the duty to pay under the terms of the same policy." *Found. Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 619, 642 P.2d 604, 605 (1982).

The general rule adopted by the New Mexico Supreme Court in regard to the duty to defend is stated as follows:

> If the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured. The question presented to the insurer in each case is whether the injured party's complaint states facts which bring the case within the coverage of the policy, not whether he can prove an action against the insured for damages.

*Am. Emp'rs' Ins. Co. v. Cont'l Cas. Co.*, 85 N.M. 346, 348, 512 P.2d 674, 676 (1973) (internal quotation marks omitted).  Thus, the Court also determines whether the duty to defend exists by

6

"comparing the coverages afforded by the policies in question with the allegations of the third party complaints." *Id.*; *see Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo*, 114 N.M. 695, 697, 845 P.2d 789, 791 (1992) ("[i]f the allegations of the complaint clearly fall outside the provisions of the policy, neither defense nor indemnity is required"); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 985 (10th Cir. 1994) (applying New Mexico law, and stating that "only where the allegations in the complaint fall outside the scope of the coverage afforded by the insurance policy may the insurer avoid its duty to defend"). New Mexico law

> requires us to limit our examination to the four corners of the complaint when determining whether a duty to defend exists, [and] it plainly requires the complaint to "state[ ] facts" that suggest the case falls within the policy's coverage, 97 N.M. at 619, 642 P.2d at 605; abstract and completely unsubstantiated allegations will not do.

*Mhoon*, 31 F.3d at 985. The insured bears the burden to demonstrate that coverage exists under the Policy. *See id.* (stating that, in summary-judgment proceedings, "for purposes of the duty to defend, [the insured] need only demonstrate that the complaint itself alleges facts tending to show that [coverage exists]").

Plaintiffs contend that "there is either clear coverage, or an ambiguity, which must be resolved in favor of coverage" because "the gravamen of the Hawkins lawsuit was the removal of an invalid lien," and that "damages to Hawkins was allegedly caused by intentional failure to remove Liens, not recording them." Doc. 82 at 11-13. The Plaintiffs's argument, however, ignores the express language of Exclusion 4.j. They fail to acknowledge that the Hawkins Complaints allege that Hawkins' damages resulted both from the Bank's fraudulent recording of the liens and its subsequent refusal to remove them, and the allegations in the Complaints establish that both actions *arose from, or were in consequence of*, the Bank's and its Officers and agents performance, and failure to properly perform, Lending Services. The Plaintiffs point to no other facts causing

7

Hawkins' injury and damages that do not fall within Exclusion 4.j.  Comparing the coverage clause and exclusions afforded by the Policy with the allegations of Hawkins' Complaint, *see Am. Emp'rs' Ins. Co.*, 85 N.M. at 348, 512 P.2d at 676, it is clear that Federal had no duty to defend Plaintiffs against Hawkins' suit.

**B.  Exclusion 4.j includes all claims arising or flowing from, or having a connection with, the Bank's lending activities.**

Plaintiffs next argue, *see* Doc. 82 at 13-14, that Federal interprets the effect of the words "arising from" in Exclusion 4.j too broadly under *Britt v. Phoenix Indem. Ins. Co.*, 120 N.M. 813, 907 P.2d 994 (1995).  They further contend that "the alleged intentional tort by the Bank of refusing to release the Liens is an independent intervening cause, completely distinct and independent from the Bank's Lending Service to a Lending Customer, the Lending Service is not the cause of the alleged damage to Hawkins, and the Lending Service exclusion does not apply."  Doc. 82 at 15. *Britt*, however, is distinguishable because it involves "a method of analysis for determining whether intentional conduct and its resulting harm arises out of the use of an uninsured vehicle" in deciding whether uninsured-motorist coverage applies to a given factual situation, *Britt.*, 120 N.M. at 817, 907 P.2d at 999, and the issue here does not involve uninsured-motorist coverage.

Exclusions in insurance contracts "shall be enforced as long as their meaning is clear and they do not conflict with statutory law." *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 329, 533 P. 2d 100, 102 (1975).  New Mexico Courts have long held, when interpreting exclusion clauses in insurance contracts, that "[t]he words 'arising out of' are very broad, general and comprehensive terms, ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'" *Baca v. N.M. State Highway Dep't*, 82 N.M. 689, 692, 486 P.2d 625, 628 (Ct. App. 1971).  And that broad interpretation is a widely accepted one.  *See Fed.*

8

*Ins. Co. v. Tri-State Ins. Co.*, 157 F. 3d 800, 804-805 (10th Cir. 1998) (stating that, "[w]hen interpreting exclusions in insurance contracts, "the general consensus [is] that the phrase 'arising out of' should be given a broad reading such as 'originating from' or 'growing out of' or 'flowing from' or 'done in connection with'- that is, it requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense" and declining to assign the broad phrase "arising out of" a narrow reading "simply because it appears in the context of an exclusionary clause."). Again, Exclusion 4.j's broad language does not require a lending activity to be the direct cause of injuries - it requires only that the "claim [be] …based upon, arising from, or in consequence of the performing or failure to perform . . . Lending Services." Doc. 70-3 at 23, 25. The Plaintiffs' "intervening cause" analysis is misplaced. The Plaintiffs placed the liens on the Hawkins property, and later refused to remove them, in the course of, and as a direct result of, the Bank's lending services and activities, and there clearly is a causal connection between these lending activities and Hawkins' injury and damages.

I have not used the BLP portion of the Policy to interpret Exclusion 4.j and I conclude that Federal used appropriate exclusionary language in the D&O policy. *See* Doc. 82 at 15. And, contrary to the Plaintiffs' bald assertions, *see id.*, there are no material questions of fact regarding causation or whether the exclusion applies, nor is there any ambiguity in the meaning of Exclusion 4.j. As a matter of law, Hawkins' claims arose from, and in consequence of, the Plaintiffs' lending services and activities, and the D&O Section Exclusion 4.j expressly precludes coverage on those claims.

Because I conclude that there is no coverage under the Policy for Hawkins' claims against the Plaintiffs and that, accordingly, Federal had no duty to defend the Plaintiffs in the suit brought in the Texas state court, I need not address Federal's alternative basis for summary judgment or any

9

other pending motion.

.       **IT IS ORDERED** that Federal's motion for summary judgment (Doc. 70) is GRANTED.

        **SO ORDERED** this 21st day of March, 2013.

                                        _____
                                        **MARTHA VÁZQUEZ**
                                        United States District Judge

.

10